**No. 23-2297**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

————————————

In re FTX TRADING LTD., *et al.*,

*Debtors.*

————————————

ANDREW R. VARA, United States Trustee for Regions Three and Nine,

*Appellant,*

v.

FTX TRADING LTD., *et al.*,

*Appellees.*

————————————

On Appeal from the United States District Court
for the District of Delaware

————————————

**BRIEF FOR APPELLANT**

————————————

*Of Counsel:*

RAMONA D. ELLIOTT
    *Deputy Director/General Counsel*

P. MATTHEW SUTKO
    *Associate General Counsel*

FREDERICK GASTON HALL
SUMI K. SAKATA
    *Trial Attorneys*
    *U.S. Department of Justice*
    *Executive Office for U.S. Trustees*

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
    *General*

MARK B. STERN
BRIAN J. SPRINGER
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7537*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue, NW*
    *Washington, DC 20530*
    *(202) 616-5446*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ...................................................................2

STATEMENT OF THE ISSUE..........................................................................2

STATEMENT OF RELATED CASES ...............................................................3

STATEMENT OF THE CASE............................................................................3

    A. Statutory Background .........................................................................3

    B. Factual Background and Prior Proceedings ......................................6

SUMMARY OF ARGUMENT...................................................................... 10

STANDARD OF REVIEW ............................................................................ 12

ARGUMENT ............................................................................................... 12

The Bankruptcy Court Was Required to Appoint an Examiner to Investigate
FTX and Issue Findings ............................................................................... 12

    A.    Appointment of an Examiner Is Mandatory Where, As Here, the
        Prerequisites of 11 U.S.C. § 1104(c)(2) Are Met.......................................12

    B.    The Bankruptcy Court Erred in Concluding That It Had
        Discretion to Deny the U.S. Trustee's Motion ..........................................18

CONCLUSION ............................................................................................ 24

COMBINED CERTIFICATIONS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*BP P.L.C. v. Mayor & City Council of Balt.,*
  141 S. Ct. 1532 (2021) .................................................................................. 21, 22

*Bruesewitz v. Wyeth Inc.,*
  561 F.3d 233 (3d Cir. 2009) ............................................................................. 20

*Calabrese, In re,*
  689 F.3d 312 (3d Cir. 2012) ............................................................................. 20

*Cinema Serv. Corp. v. Edbee Corp.,*
  774 F.2d 584 (3d Cir. 1985) ............................................................................. 24

*Doe v. Chao,*
  540 U.S. 614 (2004) ......................................................................................... 21

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.,*
  902 F.3d 147 (3d Cir. 2018) ............................................................................. 22

*GHR Cos., In re,*
  43 B.R. 165 (Bankr. D. Mass. 1984) ............................................................... 20

*Kingdomware Techs., Inc. v. United States,*
  579 U.S. 162 (2016) ......................................................................................... 12

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
  523 U.S. 26 (1998) ........................................................................................... 13

*Obduskey v. McCarthy & Holthus LLP,*
  139 S. Ct. 1029 (2019) ..................................................................................... 21

*Pellegrino v. U.S. Transp. Sec. Admin.,*
  937 F.3d 164 (3d Cir. 2019) (en banc) ............................................................ 20

*Residential Capital, LLC, In re,*
  474 B.R. 112 (Bankr. S.D.N.Y. 2012) ........................................................ 20, 21

*Revco D.S., Inc., In re*,
    898 F.2d 498 (6th Cir. 1990) .................................................1, 3, 9, 11, 14, 15, 19, 22, 23

*Riccio v. Sentry Credit, Inc.*,
    954 F.3d 582 (3d Cir. 2020) (en banc).................................................................22

*Schaefer Salt Recovery, Inc., In re*,
    542 F.3d 90 (3d Cir. 2008) ...................................................................................23

*Shelter Res. Corp., In re*,
    35 B.R. 304 (Bankr. N.D. Ohio 1983).................................................................20

*Stepnowski v. Commissioner*,
    456 F.3d 320 (3d Cir. 2006) .................................................................................19

*Trump Entm't Resorts, In re*,
    810 F.3d 161 (3d Cir. 2016) .................................................................................12

*UAL Corp., In re*,
    307 B.R. 80 (Bankr. N.D. Ill. 2004) ..............................................................16, 17

*United States v. Hodge*,
    321 F.3d 429 (3d Cir. 2003) .................................................................................19

*United States v. Taylor*,
    142 S. Ct. 2015 (2022)..........................................................................................14

**Statutes:**

11 U.S.C. § 101(14)(C) ..............................................................................................17

11 U.S.C. § 1103(c)(2) ...............................................................................................17

11 U.S.C. § 1104(a) ......................................................................................................3

11 U.S.C. § 1104(a)(1) ...............................................................................................16

11 U.S.C. § 1104(a)(2) ...............................................................................................16

11 U.S.C. § 1104(b) (1990) ........................................................................................14

11 U.S.C. § 1104(c) ......................................................... 1, 4, 9, 11, 12, 14, 18, 21, 22, 23

11 U.S.C. § 1104(c)(1) ........................................................8, 11, 12, 13, 16, 19

11 U.S.C. § 1104(c)(2) ........................................... 1, 2, 8, 10, 12, 19, 21

11 U.S.C. § 1104(d) ...................................................................... 4, 17

11 U.S.C. § 1106(a) ..............................................................................3

11 U.S.C. § 1106(a)(3) ........................................................................4

11 U.S.C. § 1106(a)(4) ................................................................. 4, 17

11 U.S.C. § 1106(a)(4)(A) ..................................................................5

11 U.S.C. § 1106(b) ................................................................... 4, 5, 17

11 U.S.C. § 1107(a) ...................................................................... 4, 17

28 U.S.C. § 157 ....................................................................................2

28 U.S.C. § 158(c)(2) ..........................................................................2

28 U.S.C. § 158(d)(2) .................................................................... 2, 10

28 U.S.C. § 1334 .................................................................................2

28 U.S.C. § 1927 ........................................................................ 23, 24

**Rules:**

Fed. R. Bankr. P. 8002(a)(1) ..............................................................2

Fed. R. Bankr. P. 8006(b) ................................................................10

Fed. R. Bankr. P. 8006(g) ..................................................................2

**Legislative Materials:**

124 Cong. Rec. H11,047 (daily ed. Sept. 28, 1978) ....................... 16

124 Cong. Rec. S17,403 (daily ed. Oct. 6, 1978) ............................................. 13, 16

H.R. 8200, 95th Cong. (1977) ........................................................................21

H.R. Rep. No. 95-595 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963 .................... 15, 21

S. Rep. No. 95-989 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787 ................................16

**Other Authorities:**

Black's Law Dictionary (5th ed. 1979) ...............................................................14

7 Collier on Bankruptcy (16th ed. 2023) ...................................... 3, 5, 15, 18, 22

Consent Preliminary Order of Forfeiture as to Specific Property,
  *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Feb. 28, 2023), ECF No. 95.......................6

Order, *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Dec. 22, 2022),
  ECF No. 15 ......................................................................................................6

Final Report of the Examiner, *In re Washington Mut., Inc.*, No. 08-12229
  (Bankr. D. Del. Nov. 1, 2010), ECF No. 5735 ....................................................6

Final Report of Examiner, Richard J. Davis, *In re Caesars Entertainment Operating Co.*,
  No. 15-01145 (Bankr. N.D. Ill. Mar. 15, 2016), ECF No. 3401 .............................5, 6

Report of Robert J. Stark, Examiner, *In re Cred Inc.*, No. 20-12836
  (Bankr. D. Del. Mar. 8, 2021), ECF No. 605.................................................5

The U.S. Trustee appeals from the bankruptcy court's order denying his motion to appoint an examiner pursuant to 11 U.S.C. § 1104(c). This appeal arises out of the attempted reorganization of multi-billion-dollar cryptocurrency company FTX Trading Ltd. and affiliated entities (collectively, FTX). Amid revelations of serious corporate failures and gross misuse of customer funds, FTX suffered a severe liquidity crisis and a virtually unprecedented decline in value. When it filed for bankruptcy, FTX had millions of creditors worldwide, and its bankruptcy represented the largest failure in the cryptocurrency industry.

Shortly after the bankruptcy was filed, the U.S. Trustee, a Department of Justice official appointed to protect the integrity of the bankruptcy system, sought the appointment of an examiner, explaining that investigation by an objective third party is appropriate given the size of FTX's debts and the allegations of corporate mismanagement. Section 1104(c)(2) of the Bankruptcy Code provides that, when requested by a party in interest or the U.S. Trustee, a bankruptcy court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" if certain of the debts "exceed $5,000,000." 11 U.S.C. § 1104(c)(2).

The bankruptcy court denied the motion to appoint an examiner even though it is not disputed that the statutory criteria for appointment under section 1104(c)(2) are satisfied. The bankruptcy court erred in concluding that appointment was not required under section 1104(c)(2), a holding in direct conflict with the Sixth Circuit's decision in *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990).

## STATEMENT OF JURISDICTION

The bankruptcy court had jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. The bankruptcy court issued its order denying the U.S. Trustee's motion to appoint an examiner on February 21, 2023. J.A. 1-2. The U.S. Trustee filed a notice of appeal to the district court on March 6, 2023, within the time permitted by 28 U.S.C. § 158(c)(2) and Federal Rule of Bankruptcy Procedure 8002(a)(1). J.A. 20-24. On May 30, 2023, the district court certified the matter for direct appeal pursuant to 28 U.S.C. § 158(d)(2). J.A. 25. The government filed its petition for permission to appeal in this Court on June 14, 2023, within the time permitted by Federal Rule of Bankruptcy Procedure 8006(g), and direct appeal was authorized on July 18, 2023, J.A. 26. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(d)(2).

## STATEMENT OF THE ISSUE

Section 1104(c)(2) of the Bankruptcy Code provides that, at the U.S. Trustee's request, a bankruptcy court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" if certain of the debts "exceed $5,000,000." 11 U.S.C. § 1104(c)(2). The question presented is:

Whether the bankruptcy court erred in denying the U.S. Trustee's motion to appoint an examiner under 11 U.S.C. § 1104(c)(2), notwithstanding that the statutory prerequisites were satisfied. J.A. 1-2.

2

## STATEMENT OF RELATED CASES

The bankruptcy court ordered the procedural consolidation and joint administration of the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors. J.A. 89.  After the district court certified the matter for direct appeal, J.A. 25, 434, this Court authorized direct appeal in *In re FTX Trading Ltd.*, No. 23-8029 (3d Cir.), J.A. 26.  No other aspect of these bankruptcy proceedings has previously been before this Court.  The Sixth Circuit addressed the question presented in this case in *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990).

## STATEMENT OF THE CASE

### A.  Statutory Background

Chapter 11 of the Bankruptcy Code allows "a debtor to reorganize its business or financial affairs or to engage in an orderly liquidation of its property either as a going concern or otherwise."  7 Collier on Bankruptcy ¶ 1100.01 (16th ed. 2023). Upon the filing of a bankruptcy case, the debtor as "debtor in possession" has control of the property of the bankruptcy estate and may continue to operate its business.  *Id.* At any point before the confirmation of a plan of reorganization, a party in interest or the U.S. Trustee can request the appointment of a trustee.  *See* 11 U.S.C. § 1104(a).  If appointed, a trustee takes possession of the estate from the debtor and becomes responsible for managing the estate's property, operating the debtor's business, and, as appropriate, filing a chapter 11 plan.  *See id.* § 1106(a).  Unlike the debtor in

possession, the trustee also has a duty to investigate and report on the debtor's conduct and financial condition. *See id.* §§ 1106(a)(3)-(4), 1107(a).

Alternatively, a party in interest or the U.S. Trustee can move for the appointment of an examiner. The appointment of examiners is governed by 11 U.S.C. § 1104(c), which provides:

> (c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>>
>> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c). If the preliminary requirements are met, the bankruptcy court "shall" appoint an examiner "if" either (1) such appointment "is in the interests of" creditors and other interested parties; or (2) certain of the debtor's debts "exceed $5,000,000." *Id.*

The examiner is an independent third party charged with performing the same investigatory functions as a trustee and filing a report about the investigation and its conclusions. *See* 11 U.S.C. §§ 1104(d), 1106(b). For example, an examiner's report

4

will include "any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor." *Id.* § 1106(a)(4)(A).  The examiner does not manage the estate or perform other trustee duties unless ordered by the court.  *See id.* § 1106(b); *see also* 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[1] ("[T]he primary use of an examiner is investigation related to the debtor or its conduct or asset transfers.").

In several large-scale bankruptcies, an examiner's investigation has helped to identify additional assets or legal claims that could be included in the chapter 11 plan, assess the strength of complex estate claims and causes of action, and resolve controversies about misconduct by third parties.  For example, in one of the first cryptocurrency bankruptcies, the examiner's report found a "dereliction in corporate responsibility," including evidence that the company failed to uncover that its recently removed chief capital officer was a fugitive from the United Kingdom who had broken out of prison.  Report of Robert J. Stark, Examiner 3-4, *In re Cred Inc.*, No. 20-12836 (Bankr. D. Del. Mar. 8, 2021), ECF No. 605.  Similarly, in the high-profile chapter 11 bankruptcy of a Las Vegas casino operator, the examiner found that the debtor had strong claims that billions of dollars in assets had been fraudulently conveyed to the non-debtor parent and other entities, with the result that the non-debtor parent agreed to return billions in assets and greatly increased the recovery for creditors.  *See* Final Report of Examiner, Richard J. Davis 1-3, *In re Caesars Entertainment Operating Co.*, No. 15-01145 (Bankr. N.D. Ill. Mar. 15, 2016), ECF No.

3401.  And when Washington Mutual filed for chapter 11, the examiner dispelled

allegations of fraud in the government-arranged sale to JPMorgan Chase.  *See* Final

Report of the Examiner 29-30, *In re Washington Mut., Inc.*, No. 08-12229 (Bankr. D.

Del. Nov. 1, 2010), ECF No. 5735.

### B.  Factual Background and Prior Proceedings

The bankruptcy proceedings at issue in this case stem from the collapse of

FTX.  FTX was a multi-billion-dollar company operating in the cryptocurrency space.

*See* J.A. 9.  FTX's founder and former CEO, Samuel Bankman-Fried, has been

federally indicted on charges of fraud and money laundering.  *See* Sealed Indictment,

*United States v. Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Dec. 9, 2022), ECF No. 1.

Other former FTX executives have pleaded guilty to similar charges.  *See, e.g.*, Order 1,

*Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Dec. 22, 2022), ECF No. 15; Consent

Preliminary Order of Forfeiture as to Specific Property 1-2, *Bankman-Fried*, No. 22-cr-

673 (S.D.N.Y. Feb. 28, 2023), ECF No. 95.

Prior to resigning, Mr. Bankman-Fried appointed a restructuring practitioner,

John J. Ray III, to replace him as CEO.  *See* J.A. 52, ¶ 4.  The same day he became

CEO, Mr. Ray authorized FTX to file chapter 11 bankruptcy petitions.  *See* J.A. 28.

Mr. Ray submitted a declaration attesting that he had never "seen such a complete

failure of corporate controls and such a complete absence of trustworthy financial

information as occurred" with FTX.  J.A. 52, ¶¶ 4-5.  He explained that many of the

FTX entities "did not have appropriate corporate governance" and "never had board

meetings," J.A. 59, ¶ 46, and that FTX lacked the "disbursement controls . . .

appropriate for a business enterprise," J.A. 64, ¶ 62. Mr. Ray described that some

FTX entities lacked any audited financial statements, J.A. 63, ¶ 57, and he expressed

"substantial concerns" about the reliability of the audited financial statements

produced by the remaining entities, J.A. 62-63, ¶¶ 55-56. FTX had no accounting

department, J.A. 63, ¶ 58, and no human resources records listing FTX's employees or

the terms and condition of their employment, J.A. 63, ¶ 59.

Mr. Ray also described his efforts to account for FTX's assets. Mr. Ray

explained that FTX had "located and secured only a fraction of [its] digital assets,"

J.A. 65, ¶ 66, because FTX had failed to maintain "appropriate books and records, or

security controls, with respect to [those] assets," most of which were in the control of

Mr. Bankman-Fried and his co-founder, J.A. 64-65, ¶ 65. FTX likewise lacked

complete books and records for the "billions in investments" in non-cryptocurrency

assets. J.A. 66, ¶ 69. Mr. Ray further explained that FTX "did not maintain

centralized control of its cash" and failed to establish procedures for maintaining

accurate lists of bank accounts and account signatories, assessing creditworthiness of

banking partners, and forecasting liquidity. J.A. 60-62, ¶¶ 50, 52.

Mr. Ray also identified alleged instances of active corporate malfeasance or

criminal conduct. For example, FTX's corporate assets were used to purchase homes

and other personal items for employees and advisors, J.A. 64, ¶ 63, and FTX used

"software to conceal the misuse of customer funds," J.A. 64-65, ¶ 65. Additionally,

7

unauthorized cryptocurrency transfers of at least $372 million were initiated on the day the bankruptcy petitions were filed, and an unauthorized source "mint[ed]" approximately $300 million in new cryptocurrency tokens after the petition date. J.A. 65, ¶ 66 (quotation marks omitted).

Less than three weeks after FTX filed for bankruptcy, the U.S. Trustee moved to appoint an examiner. *See* J.A. 95. The U.S. Trustee noted that appointment of an examiner was mandatory under 11 U.S.C. § 1104(c)(2) because the threshold requirements were satisfied, and the bankruptcy petition and accompanying documents showed that FTX had relevant debts in excess of $5 million. J.A. 98-100, ¶¶ 32-34. Mr. Ray estimated in his declaration that the custodial funds due to customers through the FTX U.S. platform alone were over $100 million. J.A. 53, ¶ 20. Alternatively, the U.S. Trustee argued that appointment of an examiner would, in any event, be in the best interests of creditors under 11 U.S.C. § 1104(c)(1) given the allegations of serious wrongdoing at FTX and other failures of corporate controls identified by Mr. Ray. *See* J.A. 100-01, ¶¶ 35-38. Several U.S. senators and state regulatory authorities joined or supported the motion. *See* J.A. 103, 106, 109, 174.

After a hearing, the bankruptcy court denied the U.S. Trustee's motion. J.A. 1-2. The court acknowledged that section 1104(c)(2)'s statutory debt minimum was satisfied. *See* J.A. 8; *see also* J.A. 196 (stipulating that debt threshold was satisfied). And the court recognized that the only court of appeals to address the question held that section 1104(c)(2) requires appointment of an examiner when the $5 million

threshold and the other preliminary requirements are met.  J.A. 13-14 (citing *In re Revco D.S., Inc.*, 898 F.2d 498, 501 (6th Cir. 1990)).

The bankruptcy court nevertheless concluded that appointment of an examiner was not mandatory under section 1104(c)(2) notwithstanding the statute's requirement that the bankruptcy court "shall" appoint an examiner if the specified statutory criteria are satisfied.  J.A. 17-19.  The court cited section 1104(c)'s language stating that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate*."  11 U.S.C. § 1104(c) (emphasis added).  The court understood the emphasized language to give it discretion not only over the contours of an examiner's investigation but also over whether an investigation should occur at all.  J.A. 18.  The court also cited a statement from the legislative history accompanying an unenacted version of section 1104(c), which, in the court's view, suggested that examiners should be appointed only if the cost of doing so would not be disproportionately high.  J.A. 18-19.  The court concluded that appointment of an examiner would not be appropriate on the ground that the additional cost of an examiner's investigation would not be in creditors' interests, noting the potential overlap with ongoing investigations by FTX's new leadership and government authorities as well as the possible cybersecurity risks of sharing data with more investigators.  *See* J.A. 9-12, 19; *see also* J.A. 1-2.

The U.S. Trustee filed a notice of appeal to the district court.  *See* J.A. 20.  Shortly after, the U.S. Trustee moved to certify the order for direct appeal to this

Court under 28 U.S.C. § 158(d)(2),[1] and the district court granted the certification motion. J.A. 25. This Court authorized direct appeal, J.A. 26, and adopted an expedited briefing schedule.

## SUMMARY OF ARGUMENT

This appeal arises out of the chapter 11 bankruptcy of a multi-billion-dollar cryptocurrency company. When it filed for bankruptcy, FTX had millions of creditors worldwide, and its bankruptcy constituted the largest failure in the cryptocurrency industry.

The U.S. Trustee promptly moved for the appointment of an independent examiner pursuant to 11 U.S.C. § 1104(c)(2), which provides that when a bankruptcy involves more than $5 million in fixed, liquidated, unsecured debts (excluding a subcategory of those debts), "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" upon request. By pairing the mandatory "shall" with the objective criteria regarding the size and type of the debtor's debts, the statute affords bankruptcy courts no discretion to deny examiner-appointment requests in this class of bankruptcy cases. As the only other court of appeals to address the question has held, section 1104(c)(2) "plainly means

---

[1] The U.S. Trustee moved for certification first in the bankruptcy court. *See* J.A. 331. The bankruptcy court did not rule on the motion, and the U.S. Trustee renewed his certification motion in district court when jurisdiction over the matter transferred to the district court. *See* J.A. 431; Fed. R. Bankr. P. 8006(b) (explaining that, for purposes of certification, the matter is pending in district court after 30 days from the notice of appeal).

that the bankruptcy court 'shall' order the appointment of an examiner" when the statutory criteria are met. *In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990).

The bankruptcy court nevertheless concluded that it could deny the motion to appoint an examiner because, in its view, the benefits to the parties and the estate of such an appointment would be outweighed by potential costs. Section 1104(c)(2) does not authorize this interest-balancing. In contrast, in evaluating requests for an appointment under section 1104(c)(1), bankruptcy courts have discretion to deny appointment of an examiner based on the "interests" of the parties and the estate. 11 U.S.C. § 1104(c)(1). Section 1104(c)(2) provides no similar authority. If the bankruptcy court's reading of the statute were correct, section 1104(c)(2) would simply replicate the same analysis that governs under section 1104(c)(1).

The court's attempt to find a textual foothold fails to read the provision as a whole. The court noted that the statute provides that examiners are appointed "to conduct such an investigation of the debtor *as is appropriate*." 11 U.S.C. § 1104(c) (emphasis added). The phrase "as is appropriate" modifies "such an investigation of the debtor" and thus serves only to clarify that the bankruptcy court retains the discretion to direct the scope and nature of the examiner's investigation. The authority to shape an "appropriate" investigation addresses practical concerns but does not alter the unambiguous requirement that the court "shall" appoint an examiner in the first instance.

## STANDARD OF REVIEW

This Court reviews de novo questions of law decided by the bankruptcy court.

*In re Trump Entm't Resorts*, 810 F.3d 161, 167 (3d Cir. 2016).

## ARGUMENT

### THE BANKRUPTCY COURT WAS REQUIRED TO APPOINT AN EXAMINER TO INVESTIGATE FTX AND ISSUE FINDINGS

#### A.  Appointment of an Examiner Is Mandatory Where, As Here, the Prerequisites of 11 U.S.C. § 1104(c)(2) Are Met

1. Section 1104(c) of the Bankruptcy Code directs that, if requested by the U.S. trustee, "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" if one of two conditions is satisfied. 11 U.S.C. § 1104(c).  The first condition, which is not directly at issue in this appeal, is met when "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." *Id.* § 1104(c)(1).  The second condition is met when "the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." *Id.* § 1104(c)(2).  It is undisputed that the second condition is satisfied: the debtors stipulated that FTX owes more than $5 million of the type of unsecured debt described in the statute. J.A. 196, 434.

Where, as here, the specified debts exceed the threshold amount and the other statutory criteria are satisfied, the bankruptcy court "shall" appoint an examiner.  *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'shall'

12

usually connotes a requirement."); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (recognizing that "shall" typically "creates an obligation impervious to . . . discretion"). Under the statute's clear command, the bankruptcy court lacked discretion to deny the U.S. Trustee's request under section 1104(c)(2).

In contrast, section 1104(c)(1) contains no objective statutory predicate requirement and instead directs the bankruptcy court to appoint an examiner if "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(c)(1). In reviewing requests under section 1104(c)(1), a bankruptcy court may thus weigh the benefits and burdens of appointing an examiner based on the circumstances of a particular case. Appointment under section 1104(c)(2), by contrast, is keyed to the magnitude of certain of the debtor's debts. That structure reflects Congress's goals of providing "special protection" in "large cases having great public interest" and enhancing public confidence in the integrity of the bankruptcy system. 124 Cong. Rec. S17,403, S17,404 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini).

The bankruptcy court's reading would elide the distinctions between the two appointment provisions and render section 1104(c)(2) essentially indistinguishable from section 1104(c)(1). Indeed, the court implied that the same discretionary authority exists regardless of whether section 1104(c)(2)'s separate debt requirements are met. As the Supreme Court has explained, courts "do not lightly assume Congress

adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022).

Applying section 1104(c)(2)'s textual directive, the only other court of appeals to address the question accordingly held that a bankruptcy court must grant a request to appoint an examiner when section 1104(c)(2)'s debt thresholds are met. *In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990).[2]  The facts of that case are materially indistinguishable: the U.S. Trustee moved for the appointment of an examiner to investigate the debtors' leveraged buyout, the parties agreed that the relevant debts exceeded the $5 million threshold, but the bankruptcy court nonetheless denied the U.S. Trustee's motion. *See id.* at 499, 501 n.2.

The Sixth Circuit reversed, concluding that section 1104(c)(2) "plainly means that the bankruptcy court 'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million, if the U.S. trustee requests one." *In re Revco*, 898 F.2d at 500-01.  "Shall," the court explained, "is generally imperative or mandatory"—it is a "word of command" that is "given a compulsory meaning; as denoting obligation." *Id.* at 501 (quoting Black's Law Dictionary 1233 (5th ed. 1979)). And the Sixth Circuit highlighted the distinction from section 1104(c)(1), which authorizes the bankruptcy court to decline to appoint an examiner if the court

---

[2] Although the relevant provision at the time was codified in a different subsection of section 1104, the language was identical. *Compare* 11 U.S.C. § 1104(c), *with id.* § 1104(b) (1990).

concludes in its "discretion" that appointment would not be beneficial to the various constituencies. *Id.* As the Sixth Circuit observed, section 1104(c)(2) would become "indistinguishable from" section 1104(c)(1) unless section 1104(c)(2) "requires the appointment of an examiner" when its requirements are satisfied. *Id.*

In short, "the appointment of an examiner" under section 1104(c)(2) "is mandatory." *In re Revco*, 898 F.2d at 501. A leading bankruptcy treatise similarly explains that "[s]ection 1104(c)(2) does not leave any room for the court to exercise discretion about whether an examiner should be appointed, as long as the $5 million threshold is met and a motion for appointment of an examiner is made." 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[2][b]; *id.* ¶ 1104.03[1] ("[A]ppointment of an examiner is mandatory if requested by . . . the United States trustee in a larger case, defined generally as a case with more than $5 million of unsecured liabilities.").

2. The drafting history of section 1104(c)(2) confirms that the text means what it says. When the Bankruptcy Code was revised in the 1970s, section 1104(c) (then, section 1104(b)) was enacted to resolve a disagreement between House and Senate members about how to handle the appointment of trustees. The House bill would have granted discretion to appoint a trustee in those circumstances where the need would outweigh the costs and expenses, *see* H.R. Rep. No. 95-595, at 402 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6358; the Senate bill would have mandated appointment of a trustee in all cases involving companies with at least $5 million in

unsecured debt and 1,000 security holders, *see* S. Rep. No. 95-989, at 115 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5901.

The law, as ultimately enacted, borrowed features of each of these bills. Appointment of a trustee is warranted when a court finds "fraud" or other "cause" or when a court finds that the appointment is "in the interests of" the parties regardless of "the amount of assets or liabilities," the sorts of discretionary judgments that the House bill endorsed. 11 U.S.C. § 1104(a)(1)-(2). Appointment of an examiner under section 1104(c)(1) is similarly based on a balancing of the various interests at play. *Id.* § 1104(c)(1). Section 1104(c)(2), in turn, accommodates the Senate's concerns by providing that "an examiner is required to be appointed in all cases in which the debtor's fixed, liquidated, and unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5 million." 124 Cong. Rec. S17,417 (statement of Sen. DeConcini); *see also id.* at S17,404 (explaining that examiners "will be automatically appointed" in large cases); *id.* at S17,419 (referring to "mandatory appointment" of examiners).

As the floor managers explained in a joint statement to their respective chambers, this compromise version would afford "special protection" in bankruptcy cases of "great public interest" by ensuring "that adequate investigation of the debtor is conducted to determine fraud or wrongdoing on the part of present management." 124 Cong. Rec. S17,404, S17,417 (statement of Sen. DeConcini); 124 Cong. Rec. H11,047, H11,100 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); *see In re*

*UAL Corp.*, 307 B.R. 80, 86 (Bankr. N.D. Ill. 2004) ("The compromise rejected

mandatory appointment of a trustee, but, as its sponsors explained, it provided for

mandatory appointment of an examiner in large cases as an alternative form of

protection against corporate mismanagement.").

Having neutral examiners perform investigations in large bankruptcies also

serves the statutory goals of objectivity and transparency.  The examiner must be a

"disinterested person," 11 U.S.C. § 1104(d)—that is, someone who has no interest

materially adverse to the creditors or estate "by reason of any direct or indirect

relationship to, connection with, or interest in, the debtor, or for any other reason," *id.*

§ 101(14)(C).  In contrast to the debtor in possession and the committee of unsecured

creditors, examiners have a duty to investigate the debtor and to publish their

findings, thereby allowing the public and creditors to know the outcome of the

investigation.  *Compare id.* § 1103(c)(2) (committee), *and id.* § 1107(a) (debtor in

possession), *with id.* § 1106(a)(4), (b) (examiner).  These features have made it possible

for examiner reports to facilitate the preparation and confirmation of chapter 11 plans

in many large-scale bankruptcies.  *See supra*, pp. 5-6.

The FTX bankruptcy proceedings exemplify the conditions to which section

1104(c)(2) is directed.  With millions of creditors worldwide, FTX was in its own

counsel's words the "latest and largest failure" in the cryptocurrency crisis.  J.A. 93-94.

As the bankruptcy court acknowledged, FTX's collapse constituted a "spectacular

crash with billions worth of assets missing, allegations of gross mismanagement and

massive fraud leading to criminal indictments and investigations by numerous federal agencies." J.A. 9. An examiner's report will not only help to shed light on wrongdoing within FTX but may also inform policy responses related to the wider cryptocurrency industry going forward. Declining to "give effect to the mandatory language of section 1104(c)(2)" would thwart Congress's judgment that appointing an examiner is "intended to be absolute in larger cases" like this one. 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[2][b].

### B.    The Bankruptcy Court Erred in Concluding That It Had Discretion to Deny the U.S. Trustee's Motion

1. The bankruptcy court acknowledged that section 1104(c)(2)'s statutory debt thresholds are satisfied in these cases. J.A. 8, 12-13. And it likewise recognized that the word "shall," as used in section 1104(c), is generally understood to impose a mandatory duty.

The bankruptcy court reasoned, however, that appointment is not mandatory when the statutory prerequisites of section 1104(c)(2) are satisfied. The court believed that it had discretion to weigh the costs and benefits of appointment in light of section 1104(c)'s requirement that a court "order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate*." 11 U.S.C. § 1104(c) (emphasis added). In the court's view, the words "as is appropriate" provide leeway to decide that no investigation is warranted and to deny the appointment request on that basis, even when all statutory criteria are met. J.A. 18-19.

18

The court's reading is at odds with the placement of "as is appropriate" in the sentence and in the provision read as a whole.  Section 1104(c)(2) states that when its specified conditions are satisfied "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate."  The phrase "as is appropriate" immediately follows "such an investigation of the debtor" and in ordinary usage thus modifies "an investigation of the debtor."  The contrary view that "as is appropriate" reaches back to modify "shall order the appointment of an examiner" flouts the grammatical rule that "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote."  *Stepnowski v. Commissioner*, 456 F.3d 320, 324 (3d Cir. 2006) (quoting *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir. 2003)).

That understanding is confirmed by the structure of section 1104(c).  Section 1104(c) sets out a command—"shall order the appointment of an examiner"—and specifies that it is triggered "if" one of two conditions is satisfied.  11 U.S.C. § 1104(c)(1)-(2).  Congress did not insert "as is appropriate" as a condition precedent for triggering the command.  Instead, "as is appropriate" appears in the statute's description of the sorts of investigations examiners can conduct and leaves a bankruptcy court with discretion to fashion the scope of the investigation.  *See In re Revco*, 898 F.2d at 501 (explaining that the "as is appropriate" language affords "broad discretion to direct the examiner's investigation, including its nature, extent, and duration").  The bankruptcy court erred in concluding that "as is appropriate" alters

19

the unambiguous requirement that the court "shall" appoint an examiner when the statutory conditions are satisfied.[3]  Nor did the bankruptcy court grapple with the fact, as discussed above, that its reading would effectively collapse section 1104(c)(1) and section 1104(c)(2), frustrating Congress's removal of discretion to appoint examiners in certain large bankruptcy cases.

2.  The bankruptcy court's reliance on legislative history was misplaced and, in any event, reflects a misunderstanding of the statutory history.  Legislative history may not alter or amend statutory text that "is clear on its face." *Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d 164, 179 (3d Cir. 2019) (en banc) (quoting *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir. 2009)).  And the court's analysis fails on its own terms.

As discussed, the two chambers of Congress initially were divided on when trustees and examiners should be appointed but eventually reached a compromise.  Failing to heed this Court's caution against looking to "the Senate and House Reports that predated the compromise," *In re Calabrese*, 689 F.3d 312, 319 (3d Cir. 2012), the bankruptcy court relied on the House Report accompanying the House's version of section 1104 that never became law and that lacked key features of the enacted

---

[3] The bankruptcy court recognized that several courts, including the Sixth Circuit, have rejected its understanding of "as is appropriate."  J.A. 13-14.  The cases that the bankruptcy court cited in support of its position similarly misread section 1104(c)'s "as is appropriate" language, *see In re Residential Capital, LLC*, 474 B.R. 112, 120-21 (Bankr. S.D.N.Y. 2012), barely address the statutory text, *see In re Shelter Res. Corp.*, 35 B.R. 304, 305 (Bankr. N.D. Ohio 1983), or simply decline to follow the statute's plain language, *see In re GHR Cos.*, 43 B.R. 165, 170-71 (Bankr. D. Mass. 1984).

version, J.A. 18 (quoting H.R. Rep. No. 95-595); *see In re Residential Capital, LLC*, 474 B.R. 112, 120-21 (Bankr. S.D.N.Y. 2012) (relying on the same House Report).

Notably, the House's proposal used the discretionary "may order the appointment of an examiner" and directed courts to consider whether an examiner was "needed" in light of the "cost and expenses." H.R. 8200, 95th Cong. § 1104(b) (1977). The enacted legislation replaced the discretionary "may" in the House bill with the mandatory "shall," 11 U.S.C. § 1104(c), omitted any reference to costs or expenses, and added an objective criterion to trigger that appointment when specified debts exceed $5 million, *id.* § 1104(c)(2).

The bankruptcy court thus embraced a regime that Congress specifically rejected, in contravention of the unequivocal language that Congress actually enacted. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1037-38 (2019) (comparing dueling version of bills to final enactment); *Doe v. Chao*, 540 U.S. 614, 622 (2004) (explaining that the proper statutory interpretation was "underscored by drafting history showing that Congress cut out the very language in the bill that would have authorized" the contrary interpretation).

3. The bankruptcy court believed that applying section 1104(c)(2)'s mandatory directive would be ill-advised in these cases because of other ongoing investigations and cybersecurity risks. *See* J.A. 17. A court's task is "not to assess the consequences of each approach and adopt the one that produces the least mischief" but "to discern and apply the law's plain meaning." *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S.

21

Ct. 1532, 1542 (2021) (quotation marks omitted).  Congress defined the cases where

appointment is mandatory by reference to the financial scale, and there is nothing

"absurd" or "nonsensical" about the legislative judgment that appointment is

warranted in this category of cases without regard to case-specific circumstances.

*Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588-89 (3d Cir. 2020) (en banc) (quoting

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018)).

Bankruptcy courts have several tools at their disposal to avoid issues that could

arise in the course of an examiner's investigation.  Even when an examiner is

appointed, "the bankruptcy court retains broad discretion to direct the examiner's

investigation, including its nature, extent, and duration." *In re Revco*, 898 F.2d at 501;

*see also* 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[2] (observing that courts may adjust

"the timing and scope of an examination").  For instance, the court may limit the

examiner's investigation by instructing the examiner to take steps to manage overlap

with parallel investigations or by identifying the topics for the examiner to address.

The statute itself notes that an "appropriate" investigation might look into, among

other things, "allegations of fraud, dishonesty, incompetence, misconduct,

mismanagement, or irregularity in the management of the affairs of the debtor of or

by current or former management." 11 U.S.C. § 1104(c).  But the authority to place

appropriate limitations on the investigation, subject to review for abuse of discretion

on appeal, does not permit the court to extinguish the investigation entirely or to

decline to order the appointment of an examiner altogether when section 1104(c)(2)'s conditions are met.

The bankruptcy court's abstract concern that creditors might make late requests for an examiner "to obtain an advantage in plan negotiations" is similarly misplaced.  J.A. 13.  No such gamesmanship is alleged here, where the U.S. Trustee requested an examiner in this large bankruptcy promptly after the cases commenced. In general, the U.S. Trustee and parties in interest have an incentive to take such action early in the bankruptcy, "before the confirmation of a plan."  11 U.S.C. § 1104(c).  The U.S. Trustee also is unaware of any abusive examiner request practices in the Sixth Circuit, where the mandatory nature of section 1104(c)(2) has been established for more than 30 years.  *See In re Revco*, 898 F.2d at 501 (identifying mechanisms to address suggestion that section 1104(c)(2) "invites abuse" and "last-minute demands for an examiner").[4]

As a backstop, a bankruptcy court may issue sanctions to deter and police improper conduct intended to cause harassment or delay.  *See, e.g.*, *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 105 (3d Cir. 2008) (discussing sanctions under 28 U.S.C.

---

[4] The record provides no support for the bankruptcy court's suggestion that the U.S. Trustee conceded that a court could decline to appoint an examiner under section 1104(c)(2) in certain situations.  J.A. 13.  To the contrary, the U.S. Trustee maintained that "there is no discretion in the statute" when section 1104(c)(2) is satisfied, J.A. 285, but explained that courts have mechanisms to deal with belated requests and bad-faith litigation tactics, such as by restricting the examiner to determining whether there is any basis for further investigation, *see* J.A. 281-87; *see also* J.A. 98-100, ¶¶ 32-34.

§ 1927); *Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 585-86 (3d Cir. 1985) (discussing sanctions under Bankruptcy Rule 9011).  And in all events, even if such policy concerns were valid, they would not provide a warrant to negate the express statutory language mandating that an examiner be appointed when the terms of section 1104(c)(2) are satisfied.

## CONCLUSION

The order of the bankruptcy court denying the U.S. Trustee's motion for appointment of an examiner should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
    *General*

*Of Counsel:*

MARK B. STERN

RAMONA D. ELLIOTT
    *Deputy Director/General Counsel*

  *s/ Brian J. Springer*

P. MATTHEW SUTKO
    *Associate General Counsel*

BRIAN J. SPRINGER
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7537*

FREDERICK G. HALL
SUMI K. SAKATA
    *Trial Attorneys*
    *U.S. Department of Justice*
    *Executive Office for U.S. Trustees*

    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 616-5446*

September 2023

# COMBINED CERTIFICATIONS

1.      Government counsel are not required to be members of the bar of this Court.

2.      This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,990 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

3.      On September 1, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

4.      The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5.      This document was scanned for viruses using CrowdStrike Falcon Sensor, and no virus was detected.


                                                        *s/ Brian J. Springer*
                                                        Brian J. Springer

**ADDENDUM**

## TABLE OF CONTENTS

11 U.S.C. § 1104(c) ............................................................................................A1

**11 U.S.C. § 1104(c)**

**§ 1104.  Appointment of trustee or examiner**

. . .

(c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

　　(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

　　(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

. . .

No. 23-2297

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

In re FTX TRADING LTD., *et al.*,

*Debtors.*

ANDREW R. VARA, United States Trustee for Regions Three and Nine,

*Appellant,*

v.

FTX TRADING LTD., *et al.*,

*Appellees.*

On Appeal from the United States District Court
for the District of Delaware

### JOINT APPENDIX VOLUME 1 OF 2 (Pages J.A. 1 to 27)

ADAM G. LANDIS
KIMBERLY A. BROWN
MATTHEW R. PIERCE
  LANDIS RATH & COBB LLP
  919 Market Street, Suite 1800
  Wilmington, Delaware 19801
  (302) 467-4400

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

MARK B. STERN
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  U.S. DEPARTMENT OF JUSTICE
  CIVIL DIVISION, APPELLATE STAFF
  950 Pennsylvania Avenue, NW
  Washington, DC 20530
  (202) 616-5446

*Counsel for Appellant*

ANDREW G. DIETDERICH
JAMES L. BROMLEY
BRIAN D. GLUECKSTEIN
ALEXA J. KRANZLEY
    SULLIVAN & CROMWELL LLP
    125 Broad Street
    New York, New York 10004
    (212) 558-4000

*Counsel for FTX Trading Ltd., et al.*


MATTHEW B. LUNN
ROBERT F. POPPITI, JR.
1000 NORTH KING STREET
WILMINGTON, DE 19801
TELEPHONE: (302) 571-6600
    YOUNG CONAWAY STARGATT &
        TAYLOR, LLP
    1000 North King Street
    Wilmington, Delaware 19801
    (302) 571-6600


KRISTOPHER M. HANSEN
KENNETH PASQUALE
ISAAC S. SASSON
JOHN F. IAFFALDANO
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6000

*Counsel for the Official Committee of Unsecured
Creditors*

# TABLE OF CONTENTS

## VOLUME I

**Page**

1. Order Denying Motion for the Appointment of an Examiner
   (Bankr. Ct. Dkt. No. 746) ...........................................................................J.A. 1

2. Excerpts of Transcript of Hearing
   (Bankr. Ct. Dkt. No. 737) ...........................................................................J.A. 3

3. Notice of Appeal and Statement of Election
   (Bankr. Ct. Dkt. No. 805) .........................................................................J.A. 20

4. Order Granting Certification Motion
   (D. Ct. Dkt. No. 40) ..................................................................................J.A. 25

5. Order Granting Petition for Permission to Appeal
   Pursuant to 28 U.S.C. Section 158(d)(2),
   *In re FTX Trading Ltd.*, No. 23-8029 (3d Cir.), ECF No. 16-1 ...........................J.A. 26

## VOLUME II

6. Voluntary Petition for Non-Individuals Filing for Bankruptcy
   (Bankr. Ct. Dkt. No. 1) .............................................................................J.A. 28

7. Excerpts of Declaration of John J. Ray III
   (Bankr. Ct. Dkt. No. 24) ...........................................................................J.A. 51

8. Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases
   (Bankr. Ct. Dkt. No. 128) .........................................................................J.A. 68

9. Excerpts of Transcript of First Day Hearing
   (Bankr. Ct. Dkt. No. 142) .........................................................................J.A. 91

10. Excerpts of Motion of the United States Trustee for Entry of an Order Directing
    the Appointment of an Examiner
    (Bankr. Ct. Dkt. No. 176) .........................................................................J.A. 95

11. Excerpts of Joinder to the Motion for Entry of an Order Directing the Appointment of an Examiner
(Bankr. Ct. Dkt. No. 263) ...................................................................J.A. 103

12. Joinder to the Motion for Entry of an Order Directing the Appointment of an Examiner
(Bankr. Ct. Dkt. No. 339) ...................................................................J.A. 106

13. Letter re Motion to Appoint Independent Examiner
(Bankr. Ct. Dkt. No. 467) ...................................................................J.A. 109

14. Excerpts of Transcript of Hearing
(Bankr. Ct. Dkt. No. 489) ...................................................................J.A. 112

15. Objection of the Official Committee of Unsecured Creditors to Motion for Entry of an Order Directing the Appointment of an Examiner
(Bankr. Ct. Dkt. No. 571) ...................................................................J.A. 125

16. Limited Objection and Response of the Joint Provisional Liquidators to Motion for Entry of an Order Directing the Appointment of an Examiner
(Bankr. Ct. Dkt. No. 572) ...................................................................J.A. 141

17. Debtors Objection to Motion for Entry of an Order Directing the Appointment of an Examiner
(Bankr. Ct. Dkt. No. 573) ...................................................................J.A. 150

18. Joinder to the Motion for Entry of an Order Directing the Appointment of an Examiner
(Bankr. Ct. Dkt. No. 600) ...................................................................J.A. 174

19. Final Pretrial Order
(Bankr. Ct. Dkt. No. 620) ...................................................................J.A. 179

20. Transcript of Hearing
(Bankr. Ct. Dkt. No. 632) ...................................................................J.A. 191

21. Statement of Issues to Be Presented on Appeal
(Bankr. Ct. Dkt. No. 1123) ...................................................................J.A. 329

22. Excerpts of Motion to Certify Direct Appeal
(Bankr. Ct. Dkt. No. 1142) ...................................................................J.A. 331

23. Excerpts of Appendix of Appellee-Debtors FTX Trading Ltd., et al.
(D. Ct. Dkt. No. 35) ..................................................................................J.A. 335

24. Memorandum Opinion on Motion to Certify Direct Appeal
(D. Ct. Dkt. No. 39) ..................................................................................J.A. 430

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> FTX TRADING LTD., *et al.*,[1] <br><br>       Debtors. | Chapter 11 <br><br> Case No. 22-11068 (JTD) <br> (Jointly Administered) <br><br> Re: D.I. 176 |

### ORDER DENYING MOTION FOR THE APPOINTMENT OF AN EXAMINER

Upon consideration of the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [D.I. 176] (the "Motion") and upon consideration of the joinders and objections filed to the Motion; and the Court finding that due and sufficient notice of the Motion was given; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this being a core proceeding under 28 U.S.C. § 157(b)(2); and the Court having entered the *Final Pretrial Order* [D.I. 620] with respect to the Motion on February 5, 2023; and the Court having held a hearing on the Motion on February 6, 2023; and the Court having issued its ruling on the Motion at a hearing on February 15, 2023; and as stated on the record and for the reasons set forth in the Court's ruling on the Motion at the February 15, 2023 hearing; it is hereby ORDERED as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

1.     The Motion is DENIED.

**Dated: February 21st, 2023**
**Wilmington, Delaware**

JOHN T. DORSEY
**UNITED STATES BANKRUPTCY JUDGE**

2

```
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .
 4   FTX TRADING LTD., et al.,     .  Case No. 22-11068 (JTD)
                                   .
 5                                 .  (Jointly Administered)
                                   .
 6                                 .  Courtroom No. 5
                                   .  824 Market Street
 7              Debtors.           .  Wilmington, Delaware 19801
                                   .
 8                                 .  Wednesday, February 15, 2023
     . . . . . . . . . . . . . .   .  10:00 a.m.
 9

10                          TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JOHN T. DORSEY
11                UNITED STATES BANKRUPTCY JUDGE

     APPEARANCES:
12

13   For the Debtor:           Adam Landis, Esquire
                               LANDIS RATH & COBB LLP
14                             919 Market Street, Suite 1800
                               Wilmington, Delaware 19801

15                             James L. Bromley, Esquire
                               SULLIVAN & CROMWELL LLP
16                             125 Broad Street
                               New York, NY 10004

17

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Danielle R. Gadson

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

1   <u>APPEARANCES (CONTINUED)</u>:

2   For the Debtors:            Matthew Lunn, Esquire
                                YOUNG CONAWAY STARGATT & TAYLOR LLP
3                               Rodney Square
                                1000 North King Street
4                               Wilmington, Delaware 19801

5   For JPLS Bahamas:          Christopher Shore, Esquire
                                WHITE & CASE LLP
6                               1221 6th Avenue
                                New York, New York 10020

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2   MOTION:                                                    PAGE

3
    Agenda
4   Item 6:  Motion of the United States Trustee for           4
             Entry of an Order Directing the Appointment
5            of an Examiner
6            [D.I. 176; Filed 12/1/22]

7             Court's Ruling:                                   5

8   Agenda
    Item 5:  Motion for an Order Granting the Committee        17
9            Leave and Permission to File the Reply of
             the Official Committee of Unsecured Creditors
10           to Objection of the United States Trustee to
             the Application for an Order Authorizing the
11           Retention and Employment of FTI Consulting,
             Inc., as Financial Advisor to the Official
12           Committee of Unsecured Creditors
             [D.I. 697, filed on February 13, 2023]
13
14            Court's Ruling:                                  21

15

16  EXHIBITS:                                                 PAGE

17  Brian Simms Declarations                                   20

18  Sophia Rolle-Kapousouzoglou Declaration                    20

19  JPL Exhibit 5 Order from Supreme Court of the Bahamas      20

20

21

22

23

24

25

1          (Proceedings commence at 10:07 a.m.)

2          (Call to order of the Court)

3              THE COURT: Good morning, everyone.  Thank you.

4    Please be seated.

5              Mr. Landis.

6              MR. LANDIS:  Good morning, Your Honor.  May I

7    please the Court, Adam Landis, for the record, from Landis

8    Rath & Cobb, on behalf of FTX Trading Ltd., and its

9    affiliated debtors.

10             Your Honor, we are here today with two agendas.  I

11   don't know if the Latin for that is agendum, but we are here

12   with two agendas; one in the FTX Trading Ltd., case and one

13   in the FTX Digital Markets case.  Nothing is contested, Your

14   Honor, on either agenda.

15             With respect to the FTX Trading agenda, and we have

16   spoken with counsel to the joint provisional liquidators, we

17   thought we would go forward with the FTX Trading Chapter 11

18   agenda first. We filed a second amended agenda last night

19   noting that the committee had filed certificates of counsel

20   with respect to the professional retentions that had been

21   contested by the U.S. Trustee.

22             I note that, I think, as we were standing here this

23   morning Your Honor signed the orders for FTI and Jefferies.

24             THE COURT:  Yes.

25             MR. LANDIS:  So, unless Your Honor has question

1  with respect to anything on the agenda, we believe we can

2  move right to item number six which is the Court's ruling

3  with respect to the United States Trustees motion to appoint

4  an examiner.

5          THE COURT:  Okay.  I don't have any questions.  So,

6  we can go ahead.

7          So, this is the ruling on the motion to appoint an

8  examiner. The United States Trustee moved for the appointment

9  of an examiner in these cases pursuant to Section 1104(c)(1)

10 and (c)(2) of the Bankruptcy Code.  Section 1104 provides

11 that if a Chapter 11 Trustee is not appointed in a case then

12 at any time prior to confirmation of a plan:

13          "On request of a party in interest or the United

14 States Trustee, and after notice and a hearing, the Court

15 shall appoint an examiner to conduct such an investigation of

16 the debtor, as is appropriate, including an investigation of

17 allegations of fraud, dishonesty, incompetence, misconduct,

18 mismanagement, or irregularity in the management of the

19 debtor if (I) such appointment is in the interest of the

20 creditors, and any equity security holders, and other

21 interests of the estate, or (II) the debtors fixed liquidated

22 unsecured debts other then debts for goods, services, or

23 taxes, or owing to an insider exceed $5 million."

24          The Trustee, joined by several state regulatory

25 authorities, argues that because there are allegations of

1 massive fraud alleged against the debtors prepetition

2 management the appointment of an examiner is in the best

3 interest of the debtor's creditors and other interest holders

4 under 1104(c)(1).

5      The Trustee also argues that even if I conclude the

6 requirements of 1104(c)(1) have not been met, I am required

7 to appoint an examiner under 1104(c)(2) because three of the

8 debtors meet the debt threshold or the debtors do not, for

9 the purposes of this motion, contest the debt limit with

10 regard to the remaining debtors.

11      The debtors, the committee, general unsecured

12 creditors, and the joint provisional liquidators or FTX

13 Digital Markets Ltd., appointed in the provisional

14 liquidation proceeding pending in the Bahamas, object to the

15 appointment of an examiner arguing that given the

16 investigations being conducted by the debtors and the

17 committee, as well as various federal law enforcement and

18 regulatory agencies, there is no need to appoint an examiner

19 to conduct yet another costly investigation that would slow

20 the progress of these cases.  Moreover, the objectors argue

21 that, contrary to the Trustees position, appointment of an

22 examiner is not mandatory under 1104(c)(2) even if the debt

23 threshold is met.

24      For the reasons I will explain, I agree with the

25 objectors and will deny the motion to appoint an examiner.

1     These cases have been described as unique, unusual,

2   highly complex, and unprecedented to name just a few of the

3   adjectives applied to them, and they have certainly lived up

4   to that billing.  A multi-billion dollar company built over

5   the course of just a few years.  A spectacular crash with

6   billions worth of assets missing, allegations of gross

7   mismanagement and massive fraud leading to criminal

8   indictments and investigations by numerous federal agencies.

9     Behind that backdrop sit the creditors and the

10   customers of the debtors; individuals and entities that

11   trusted the management of the company with a relatively new

12   type of asset, cryptocurrency, as well as those who did

13   business with the debtors on a day to day basis.  This case

14   is about making sure that those parties get back as much

15   value as possible from the debtor's estates.

16     That process began immediately prior to the filing

17   of cases with the appointment of Mr. Ray as the new CEO of

18   the debtors.  Although appointed by the previous CEO, Mr.

19   Bankman-Fried, who is currently under federal indictment,

20   there is no question that Mr. Ray is completely independent

21   of prior management and the company seems appointed to lead.

22     Mr. Ray is the consummate professional, highly

23   qualified with decades of experience in taking control of

24   companies in dire financial condition.  Mr. Ray, in turn,

25   appointed four independent directors to three silos of debtor

1  entities to assist him in determining what happened, how to

2  sort out the financial condition of the debtors, and return

3  as much value as possible to creditors and customers.

4         Each of the four directors are also highly

5  qualified professionals with no prior connection with the

6  debtors or the debtor's prior management.  Mr. Ray also

7  insured that all prior senior management of the debtors were

8  removed; two of whom have been indicted and plead guilty to

9  various crimes involving the management of the debtors.

10 Although some prior officers of the debtors remain in place,

11 there is no indication they were involved in any wrongdoing,

12 and according to Mr. Ray all have been stripped of any

13 decision making authority.

14        Mr. Ray has also retained a group of highly

15 qualified experts to assist in sorting through the debtor's

16 poorly maintained records.  In many instances records don't

17 exist at all because the recordkeeping was neglected by prior

18 management.  Mr. Ray testified that those experts, among

19 other things, are accessing the debtor's extremely vulnerable

20 electronic information containing crypto-assets that have

21 already suffered hacking incidents both pre and post-petition

22 before controls could be restored.  Those hacks resulted in

23 the possible loss of hundreds of millions, if not billions of

24 dollars' worth, of crypto-assets.

25        He further testified that he has been informed by

1 those experts that given additional persons access to the

2 data creates the risk of further inadvertent disclosure or

3 hacking of information that could lead to additional losses.

4 Indeed, even committee counsel indicated that while they are

5 working closely with the debtors in conducting investigations

6 into what happened, the committee is not requesting direct

7 access to the debtor's data due to those risks.

8         There is no question that an examiner or a Chapter

9 11 Trustee, for that matter, appointed pursuant to Section

10 1104 would have the same attributes as Mr. Ray and the

11 independent directors. That person would be independent with

12 no connection to the debtors or the debtors prior management.

13 That person would need to be qualified -- would need to be as

14 qualified and as experienced as Mr. Ray and that person would

15 retain qualified and experienced professionals to assist with

16 the investigation.

17         There is no question that if an examiner was

18 appointed here the cost of the examination, given the scope

19 suggested by the Trustee at the hearing, would be in the tens

20 of millions of dollars and would likely exceed $100 million.

21 Contrary to the suggestion of the Trustee, the debtors and

22 the committee could not merely sit idly by while a months

23 long investigation unfolded leading to exponential costs to

24 the estate which would have to be borne by the creditors.

25         While the debtors may ultimately have billions of

1  dollars' worth of assets to distribute, creditors will likely

2  not come close to recovering the full amount of their losses

3  and it may take some time to recover anything as the debtors

4  and the committee work to claw back as much as the assets as

5  possible.

6         Given the facts and circumstances of this highly

7  unique case I have no doubt that the appointment of an

8  examiner would not be in the best interests of the creditors.

9  There are already multiple investigations underway by

10 incredibly competent and independent parties.  Requiring

11 creditors to bear the burden of yet another investigation

12 does not comport with the requirements of Section 1104(c)(1)

13 or the general scheme of the bankruptcy code; that is to

14 maximize to recovery to creditors.

15        It is important to keep in mind that while we talk

16 about the cost of an investigation being born by the debtors

17 we are actually talking about the cost being born by the

18 creditors.  Every dollar spent in these cases on

19 administrative expenses is a dollar less to the creditors;

20 therefore, I will deny the request to appoint an examiner

21 under 1104(c)(1).

22        The Trustee argues, however, that even if I

23 conclude that the appointment of an examiner is not in the

24 best interests of the creditors, I am still obligated to

25 appoint one as mandated by Section 1104(c)(2) because the

1 debtors met the debt threshold or, at least, do not contest

2 that they do for purposes of this motion.  Even the Trustee

3 concedes, however, that a Bankruptcy Court has some

4 discretion in determining whether or not an examiner must be

5 appointed under 1104(c)(2), for example, for a motion to

6 appoint an examiner is being used by a creditor to obtain an

7 advantage in plan negotiations.  In other words, the Trustee

8 agrees there are times when the appointment of an examiner

9 would not be appropriate under 1104(c)(2).

10      To be sure there is a split of authority over

11 whether 1104(c)(2)leaves any discretion on the appointment of

12 an examiner, Courts that hold there is no discretion

13 concentrate on the language in 1104 that states:

14      "The Court shall appoint an examiner if the debtor

15 meets the debt requirements of (c)(2)."

16      Those Courts either ignore the additional language

17 of 1104 that states: "To conduct such an investigation of the

18 debtors as is appropriate" or conclude that the language only

19 means the Court can direct the scope and nature of an

20 examination after an examiner is appointed.  For example, see

21 In Re Revco, 898 F.2d 498 at 501, Sixth Circuit (1990).  The

22 Court held appointment is mandatory, but: "The Bankruptcy

23 Court retains broad discretion to direct the examiner's

24 investigation including its nature, extent, and duration."

25      The Sixth Circuit is the only Circuit Court of

1  Appeals to consider the issue.  Other courts have concluded

2  that the as appropriate language in 1104(c) permits a

3  Bankruptcy Court to deny the appointment of an examiner in

4  limited circumstances even if the debtor meets the debt

5  requirements of (c)(2).

6         Examples are In Re Residential Capital LLC, 474

7  B.R. 112, 117, Bankruptcy SDNY (2012); In Re Dewey & LeBoeuf,

8  478 B.R. 627, 629, Bankruptcy SNDY (2012); In Re Shelter

9  Resources, 35 B.R. 304, 305, Bankruptcy Northern District of

10 Ohio (1983); In Re Gilman Services, 46 B.R. 322, 327,

11 Bankruptcy District of Massachusetts (1985); In Re Erickson

12 Retirement Communities LLC, 425 B.R. 309 at 312, Bankruptcy

13 Northern District of Texas (2010); In Re GHR Companies, Inc.,

14 43 B.R. 165, 170, Bankruptcy District of Massachusetts

15 (1984).

16         Indeed, every bankruptcy judge in this district to

17 consider the issue has concluded that there is discretion;

18 see In Re SA Telecom Inc., Case No. 97-2395-2401, Judge

19 Walsh, March 27th, 1998, Hearing Transcript at 82; In Re

20 Spansion, 426 B.R. 114, 128, Bankruptcy Court District of

21 Delaware (2010), a Judge Shannon decision; In Re Visteon

22 Corporation, No. 09-11786, a Judge Sontchi decision from May

23 12th, 2010, Hearing Transcript at 170; In Re Washington

24 Mutual, Inc., Case No. 08-12229, a Judge Walrath decision,

25 Bankruptcy District of Delaware, May 5th, 2010, Hearing

1   Transcript at 97; and two of my own prior cases In Re Cred

2   Inc., Case No. 20-12836, Bankruptcy District of Delaware,

3   December 12th, 2020, Hearing Transcript at 95, and In Re

4   Mallinckrodt PLC, Case No. 20-12522, November 22nd, 2021,

5   Hearing Transcript 28 through 46.

6           As Judge Glenn posited the question in Residential

7   Capital:

8           "If the as is appropriate language provides such

9   discretion with respect to the nature, extent, and duration

10  of the investigation, then why doesn't the same language

11  provide discretion to just say no to an examiner

12  investigation where it may not be justified on the particular

13  facts and circumstances of the case."

14          That is 474 B.R. at 118.

15          As the Trustee pointed out during argument,

16  ultimately Judge Glenn did appoint an examiner in Residential

17  Capital because (I) no plan had been confirmed; (II) no

18  Trustee had been appointed; (III) the debtor had fixed debts

19  exceeding $5 million; and (IV) investigation was appropriate,

20  and an investigation by the committee had just begun.

21          The first three elements of this analysis are

22  certainly present here, but while one could argue the fourth

23  is also met because the debtors and the committee are in the

24  early stages of their investigations the facts present here

25  are fundamentally different then Residential Capital.

1          First, Judge Glenn recognized in <u>Residential</u>

2    <u>Capital</u> that:

3          "Other than the committee, there is currently no

4    independent party with the ability and authority to fully

5    investigate and analyze the transactions at issue."

6          Judge Glenn emphasized the no independent party in

7    that state.  By contrast, in this case, all the senior

8    managers of the company accused of wrongdoing have been

9    removed and replaced by extremely competent independent

10   professionals led by Mr. Ray with the ability and authority

11   to investigate all claims that might ultimately benefit the

12   creditors in these cases.

13         Moreover, as indicated before, all remaining

14   employees and officers of the debtors that have not been

15   accused of wrongdoing do not possess any decision-making

16   authority.  Mr. Ray has also retained professionals that are

17   fully capable of conducting a thorough investigation.

18         Second, as Judge Glenn recognized, an examiner

19   investigation might not be appropriate when, among other

20   things, the debtors senior management has been indicted; 474

21   B.R. at 118, Footnote 6.  Here, of course, senior management

22   has been indicted; two have plead guilty and a third is

23   scheduled for trial in October.

24         Finally, the issues to be investigated in

25   <u>Residential Capital</u> involved a "Complex constellation of pre

1   and post-bankruptcy transactions involving billions of

2   dollars in transfers and financing among interested parties."

3   That is at 115, Note 3, emphasis on "interested parties."

4          In Residential Capital the allegations were that

5   transfers between the debtors and certain secured creditors

6   benefited the secured creditors to the detriment of unsecured

7   creditors.  Here, there are no secured creditors.  There are

8   only unsecured creditors.

9          Finally, the issues to be investigated in

10  Residential Capital -- excuse me, moreover, while the

11  transfers at issue in Residential Capital were clearly

12  complex commercial transactions, there was no indication that

13  accessing the debtor's financial information would create a

14  risk of further harm to the debtors or their creditors.  By

15  contrast, the uncontroverted testimony during the hearing in

16  this matter established that given the debtor's business and

17  the vulnerability of the debtor's financial data, permitting

18  additional parties access to the financial information would

19  create an increased risk of further loss through inadvertent

20  disclosures or hacking.

21         Therefore, I conclude that under the facts and

22  circumstances of these cases, appointment of an examiner is

23  not needed pursuant to 1104(c)(2) and appointing one would

24  impose an unnecessary burden on the debtors and ultimately

25  the creditors for whose benefit these cases are being

1  pursued.  Contrary to the Trustees position this is not

2  inconsistent with the language of the statute or the

3  legislative history.

4      Congress did not explain the language of the

5  statute itself what it meant by the "as is appropriate"

6  limitation.  As I previously mentioned, many courts have

7  concluded that it means a Bankruptcy Court must always

8  appoint an examiner if the debt limit has been met, but can

9  limit the nature, extent and duration of any examination.

10 Others have concluded that if the Bankruptcy Court can limit

11 the scope and duration it must also mean that the Court can

12 conclude that no examination is needed at all under specific

13 facts and circumstances.

14      Clearly, there is more than one logical conclusion

15 as to the meaning of Section 1104(c).  The legislative

16 history of 1104(c), which at the time of its enactment was

17 1104(b), concluded that:

18      "The standards for the appointment of an examiner

19 are the same as those for the appointment of a Trustee. The

20 protection must be needed and the cost and expense must not

21 be disproportionately high."

22      HR Rep No. 95-595, Ninety-Fifth Congress First

23 Section 402 (1977).

24      Thus, the legislative history supports the

25 conclusion that an examiner shall be appointed "as

1   appropriate under the particular circumstances of the case,"

2   but "the protection must be needed."  That legislative intent

3   is met in cases where even though the debt limit of

4   1104(c)(2) is met the evidence establishes and examiner is

5   not needed under the facts and circumstances of a particular

6   case.

7           Therefore, I will sustain the objections and deny

8   the motion to appoint an examiner.  The parties should meet

9   and confer and submit a form of order under certification of

10  counsel.

11          Any questions?

12      (No verbal response)

13          THE COURT:  Next up.

14          MR. LANDIS:  Thank you, Your Honor.

15          I just wanted to go back very briefly to the

16  second amended agenda.  There's an Item 5 that was the

17  committee's motion for permission to file a response to the

18  United States Trustees objection.  I believe that matter is

19  mooted out and the committee is not pressing it, but I

20  didn't, for house keeping purposes, want to just let that

21  hang out on the agenda.  So, you'll probably hear from the

22  committee on that.

23          THE COURT:  It does seem moot.

24          MR. LUNN:  Your Honor, Matthew Lunn from Young

25  Conaway.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| FTX TRADING LTD., *et al.*,[1] | : | Case No. 22-11068 (JTD) |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
|  | : |  |

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**

<u>**Part 1: Identify the appellant(s)**</u>

1. Name(s) of appellant(s):  Andrew R. Vara, United States Trustee for Region 3

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ❑ Plaintiff
   ❑ Defendant
   ❑ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ❑ Debtor
   ❑ Creditor
   ❑ Trustee
   ☑ Other (describe) United States Trustee, Region 3

<u>**Part 2:  Identify the subject of this appeal**</u>

1. Describe the judgment, order, or decree appealed from:

   Order Denying Motion for the Appointment of an Examiner (D.I. 746), a copy of which is attached hereto as Exhibit A.

2. State the date on which the judgment, order, or decree was entered:   February 21, 2023

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: FTX Trading Ltd., et al.

   Attorney: Adam G. Landis, Esquire
   Landis Rath & Cobb LLP
   919 Market Street, Suite 1800
   Wilmington, DE 19801
   Telephone: (302) 467-4400
   Facsimile: (302) 467-4450

   -and-

   James L. Bromley, Esquire
   Sullivan & Cromwell LLP
   125 Broad Street
   New York, NY 10004
   Telephone: (212) 558-4000
   Facsimile: (212) 558-3588

2. Party: Official Committee of
   Unsecured Creditors

   Attorney: Robert F. Poppiti, Jr., Esquire
   Young Conaway Stargatt &
   Taylor, LLP
   1000 North King Street
   Wilmington, DE 19801
   Telephone: (302) 571-6600
   Facsimile: (302) 571-1253

   -and-

   Kristopher M. Hansen, Esquire
   Paul Hastings LLP
   200 Park Avenue
   New York, NY 10166
   Telephone: (212) 318-6000
   Facsimile: (212) 319-4090

3. Party: Joint Provisional Liquidators of
   FTX Digital Markets Ltd.
   (in Provisional Liquidation)

   Attorney: J. Christopher Shore, Esquire
   White & Case LLP
   1221 Avenue of the Americas
   New York, NY 10020
   Telephone: (212) 819-8200

   -and-

|  |  |  | Kevin Gross, Esquire |
|  |  |  | Richards, Layton & Finger, P.A. |
|  |  |  | One Rodney Square |
|  |  |  | Wilmington, DE 19801 |
|  |  |  | Telephone: (302) 651-7700 |
|  |  |  | Facsimile: (302) 651-7701 |

4. Party: State of Wisconsin
Department of Financial Institutions

Attorney: Michael D. Morris, Esquire
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707
Telephone: (608) 266-3936
Facsimile:  (608) 294-2907

5. Party: State of Vermont
Department of Financial Regulation

Attorney: Jennifer Rood, Esquire
Vermont Dept. of Fin. Reg.
89 Main Street, Third Floor
Montpelier, VT 05620
Telephone: (802) 828-5672

6. Party: State of Texas
Texas State Securities Board
Texas Department of Banking

Attorney: Roma N. Desai, Esquire
Office of the Attorney General
of Texas
Bankruptcy & Collections Division
P.O. Box 12548 MC008
Austin, TX 78711-2548
Telephone: (512) 463-2173
Facsimile:  (512) 936-1409


**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy  Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**


*/s/ Juliet M. Sarkessian, Esquire*
Signature of attorney for appellant


Name, address, and telephone number of attorney:

Juliet M. Sarkessian
Trial Attorney
Benjamin A. Hackman
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
juliet.m.sarkessian@usdoj.gov
benjamin.a.hackman@usdoj.gov

-and-

David Gerardi
Trial Attorney
Robert J. Schneider, Jr.
Trial Attorney
One Newark Center
1085 Raymond Boulevard
Suite 2100
Newark, NJ  07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
david.gerardi@usdoj.gov
robert.j.schneider@usdoj.gov

-and-

Executive Office for United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 25530
Telephone:  (202) 307-1399
Facsimile:   (202) 307-2397

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the  form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

Date:   March 6, 2023

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE FTX TRADING LTD., *et al.,* | : | Chapter 11 |
| | : | Case No. 22-11068 (JTD) |
| Debtors. | : | (Jointly Administered) |
| | : | |

| | | |
|---|---|---|
| | : | |
| ANDREW R. VARA, UNITED STATES | : | |
| TRUSTEE, | : | |
| | : | |
| Appellant, | : | Civ. No. 23-241 (CFC) |
| v. | : | |
| | : | |
| FTX TRADING LTD., *et al.,* | : | |
| | : | |
| Appellees. | : | |
| | : | |

**ORDER**

For the reasons set forth in the accompanying Memorandum Opinion, it is

hereby ORDERED:

The Certification Motion (D.I. 14) is GRANTED pursuant to the first subpart

of 28 U.S.C. § 158(d)(2)(A)(i). Consideration of the merits of the appeal shall be

STAYED pending a decision by the Third Circuit.

Entered this Thirtieth day of May in 2023.

_____
CHIEF JUDGE

J.A. 25

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

CCO-093

No. 23-8029

In re: FTX Trading Ltd., et al., Debtors

Andrew R. Vara, United States Trustee for Region 3,
Petitioner

(D. Del. No. 1-23-cv-00241 and Bankr D. Del. No. 22-11068)

Present:  SHWARTZ, MATEY and PHIPPS, Circuit Judges

1. Petition for Permission to Appeal pursuant to 28 U.S.C. Section 158(d)(2) filed by Petitioner Andrew R. Vara;

2. Response by Respondent in Opposition for Permission to Appeal;

3. Reply by Petitioner in Further Support of Petition.

Respectfully,
Clerk/sb

_____ORDER_____

The foregoing Petition for Permission to Appeal pursuant to 28 U.S.C. Section 158(d)(2) filed by Petitioner Andrew R. Vara is granted.

By the Court,

s/ *Peter J. Phipps*
Circuit Judge

Dated: July 18, 2023
Sb/cc:   All Counsel of Record

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## NOTICE

### GRANT OF PERMISSION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. SECTION 158(d)(2)(A)

The Court of Appeals has granted a petition for leave to appeal in this matter. Petitioner must pay the $207.00 docketing fee in the bankruptcy court within 14 days after the entry of the order granting permission for leave to appeal. **If the United States government is the appellant, an additional fee by the government is not required. Fed. R. App. P.5.**

A new notice of appeal does not need to be filed. A copy of the Court's order granting permission for leave to appeal serves as the notice of appeal and has been forwarded to the appropriate court.

The entry of date of the order granting permission to appeal serves as the date of filing of the notice of appeal for calculating time under Fed. R. App. P. 5(d)(1).

Upon receipt of the notice from the District Court that the Notice of Appeal has been entered on its docket, the appeal will be opened on the general docket. All future filings regarding the appeal will be entered under the new docket number.

Dated: July 18, 2023