No. 23-2297

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

In re FTX TRADING LTD., *et al.*,

*Debtors.*

ANDREW R. VARA, United States Trustee for Regions Three and Nine,

*Appellant*,

v.

FTX TRADING LTD., *et al.*,

*Appellees.*

On Appeal from the United States District Court
for the District of Delaware

**REPLY BRIEF FOR APPELLANT**

*Of Counsel:*

RAMONA D. ELLIOTT
  *Deputy Director/General Counsel*

P. MATTHEW SUTKO
  *Associate General Counsel*

FREDERICK G. HALL
SUMI K. SAKATA
  *Trial Attorneys*
  *U.S. Department of Justice*
  *Executive Office for U.S. Trustees*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MARK B. STERN
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 616-5446*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................................1

ARGUMENT .........................................................................................................2

CONCLUSION .......................................................................................................9

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Begier v. Internal Revenue Serv.*,
   496 U.S. 53 (1990) ............................................................................................8

*Calabrese, In re*,
   689 F.3d 312 (3d Cir. 2012) ..............................................................................8

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*,
   902 F.3d 147 (3d Cir. 2018) ..............................................................................6

*G-I Holdings, Inc., In re*,
   385 F.3d 313 (3d Cir. 2004) ..............................................................................4

*Global Indus. Techs., Inc., In re*,
   645 F.3d 201 (3d Cir. 2011) (en banc) .............................................................5

*LTL Mgmt., LLC, In re*,
   64 F.4th 84 (3d Cir. 2023) .................................................................................6

*Marvel Entm't Grp., Inc., In re*,
   140 F.3d 463 (3d Cir. 1998) ......................................................................... 3, 4

*Revco D.S., Inc., In re*,
   898 F.2d 498 (6th Cir. 1990) ..........................................................1, 2, 3, 4, 6

*Riccio v. Sentry Credit, Inc.*,
   954 F.3d 582 (3d Cir. 2020) (en banc) ......................................................... 4, 6

**Statutes:**

11 U.S.C. § 1104(c) ................................................................................................3

11 U.S.C. § 1104(c)(1) ...........................................................................................1

11 U.S.C. § 1104(c)(2) .................................................................................. 1, 2, 5

**Rule:**

Fed. R. Bankr. P. 9011(b)(1) ...................................................................................................7

**Legislative Material:**

124 Cong. Rec. S17,403 (daily ed. Oct. 6, 1978) ..................................................................8

**Other Authorities:**

7 Collier on Bankruptcy (16th ed. 2023) ..................................................................1, 2, 5, 6

10 Collier on Bankruptcy (16th ed. 2023) ............................................................................7

## INTRODUCTION AND SUMMARY

The Bankruptcy Code provision at issue contains a clear mandatory directive: where certain of the debtor's debts "exceed $5,000,000," a bankruptcy court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" upon request. 11 U.S.C. § 1104(c)(2). All agree that FTX owes more than $5 million of the type of unsecured debt described in the statute and that the U.S. Trustee requested an examiner soon after the bankruptcy commenced. Because it is undisputed that the statutory predicate is met in this case, the bankruptcy court was required to appoint a neutral examiner to conduct an investigation.

Appellees offer no sound basis to adopt an interpretation at odds with that of the Sixth Circuit's decision in *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990), and the view of the leading bankruptcy treatise, 7 Collier on Bankruptcy ¶ 1104.03[2][b] (16th ed. 2023). The statute requires the appointment of an examiner in two circumstances. First, if "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(c)(1). Second, and in the disjunctive, if "the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." *Id.* § 1104(c)(2). Appellees would conflate the two provisions so that the requirements of section 1104(c)(1) would be incorporated into section 1104(c)(2). No principle of statutory interpretation permits this statutory surgery.

# ARGUMENT

1. The Bankruptcy Code states in no uncertain terms that when a bankruptcy involves more than $5 million in qualifying debts (a predicate that is undisputedly met in this case), "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" if requested. 11 U.S.C. § 1104(c)(2). The statute establishes objective criteria regarding the size and type of the debts that must be satisfied to trigger this provision. Where those criteria are satisfied, a bankruptcy court lacks discretion to deny a motion to appoint an examiner: the court "shall order the appointment." *See* Gov't Br. 12-13. Thus, "[w]hen the total 'fixed, liquidated, unsecured' debt is greater than $5 million, the statute requires the court to appoint an examiner." *In re Revco D.S., Inc.*, 898 F.2d 498, 501 (6th Cir. 1990); *see also* 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[2][b] ("Section 1104(c)(2) does not leave any room for the court to exercise discretion about whether an examiner should be appointed, as long as the $5 million threshold is met and a motion for appointment of an examiner is made.").

Appellees mistakenly read the statute as if it provided that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor if the court believes an investigation is appropriate." That is not the statute that Congress enacted. When either of two conditions is satisfied—appointment would be in the interests of the parties and the estate under section 1104(c)(1) or, as here, the debt threshold is met under section 1104(c)(2)—an examiner must be appointed to

investigate. The "as is appropriate" language on which appellees fixate in turn modifies the words that immediately precede it—"such an investigation of the debtor"—thereby authorizing the bankruptcy court to determine the appropriate scope of the examiner's investigation. *See* Gov't Br. 19-20; *see also In re Revco*, 898 F.2d at 501 (explaining that courts may shape the "nature, extent, and duration" of the investigation "as is appropriate"). Immediately following the "as is appropriate" language, the statute identifies the types of concerns and allegations that might form part of an appropriate investigation, including "allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management." 11 U.S.C. § 1104(c).

FTX notes that section 1104(c)(1) also uses the word "shall," as does section 1104(a), which governs the appointment of a trustee. Both of these sections require judgments by the bankruptcy court in applying their criteria. FTX thus infers that section 1104(c)(2) must allow the bankruptcy court to deny a request for appointment even when its criteria are satisfied. *See* FTX Br. 18-19, 27-28. FTX fundamentally misunderstands the workings of these provisions. Sections 1104(a) and 1104(c)(1) require a bankruptcy court to assess a variety of factors and, in some instances, to balance competing concerns. The provisions thus require judgments by the bankruptcy court, but "the appointment . . . is mandatory" once a determination is made that the standards of those provisions are met. *In re Marvel Entm't Grp., Inc.*,

3

140 F.3d 463, 472 (3d Cir. 1998); *see also In re G-I Holdings, Inc.*, 385 F.3d 313, 318 (3d Cir. 2004) (Alito, J.) (similar).

Section 1104(c)(2) establishes an objective predicate based on the size and type of debts in the bankruptcy. In contrast to the provisions on which appellees seek to rely, section 1104(c)(2) provides for no other judgments by the bankruptcy court regarding the utility of the appointment or the interests of the creditors. When a court determines that section 1104(c)(2)'s criteria are satisfied, the appointment of an examiner is mandatory. Indeed, the lack of discretionary language in section 1104(c)(2) as compared to the flexible criteria in the other appointment provisions "could not be more striking." *In re Revco*, 898 F.2d at 501. Appellees would rob section 1104(c)(2) of force by erasing the precise feature that differentiates it from section 1104(c)(1). *See* Gov't Br. 13-14.

2. Appellees urge that requiring appointment of an examiner when the criteria of section 1104(c)(2) are satisfied would "eviscerate the power of bankruptcy courts" and would be "bizarre" and "absurd." FTX Br. 28 (quotation marks omitted); Comm. Br. 11. Far from establishing that Congress lacked "any conceivable justification" for making appointment under section 1104(c)(2) mandatory, *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (en banc), appellees' resort to rhetoric cannot achieve their aim of importing the criteria of section 1104(c)(1) into section 1104(c)(2).

4

Congress determined that appointment is warranted in this class of large bankruptcy cases and tasked the courts to tailor the investigation "as is appropriate" under the circumstances. It is not at all "absurd" that Congress would require appointment of an examiner in cases meeting the provision's objective criteria, while giving bankruptcy courts authority to ensure that the investigation is directed at the type of concerns and allegations listed in the statute. Appellees mistakenly suggest that a bankruptcy court could conclude that in its view no investigation would be appropriate and might "limit[] an examiner's investigative duties accordingly, to zero." FTX Br. 31. What is "appropriate" is determined by the type of concerns identified in the statute, not on a bankruptcy court's view that other investigations satisfy the goals of the provision. *See* 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[2] (explaining that bankruptcy courts contravene the statute "to the extent that they seek to deny an examiner appointment in favor of an alternative procedure").

Nor is there anything nonsensical, *see* FTX Br. 34-35, about allowing "parties affected by a chapter 11 proceeding," in addition to the U.S. Trustee, to seek an objective examiner's investigation when warranted. *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) (en banc) (quotation marks omitted). The committee of unsecured creditors similarly criticizes the $5 million threshold as "outdated and quite low." Comm. Br. 10. Section 1104(c)(2) circumscribes the types of qualifying debts to those that are "fixed, liquidated, [and] unsecured" and excludes "debts for goods, services, or taxes, or owing to an insider." 11 U.S.C. § 1104(c)(2). Regardless, any

5

asserted "need for a change in the law" must be directed to "Congress—not the Judiciary." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 154 (3d Cir. 2018).

Appellees do not advance their argument by urging that a party might request appointment of an examiner "as a litigation tactic," FTX Br. 34, or "for an untoward purpose," Comm. Br. 10. Appellees provide no basis for concluding that these concerns are anything other than conjectural, particularly given that the government's position here is reflected in the leading bankruptcy treatise, *see* 7 Collier on Bankruptcy, *supra*, ¶ 1104.03[2][b], and was expressly adopted by the Sixth Circuit more than three decades ago. Courts are not in the business of contorting statutory text to address perceived "negative consequences." *Riccio*, 954 F.3d at 588.

Appellees largely ignore the mechanisms outlined in our opening brief to address their practical concerns. *See* Gov't Br. 22-24. They do not dispute that bankruptcy courts retain latitude to control the "nature, extent, and duration" of an investigation, *In re Revco*, 898 F.2d at 501,[1] and to issue sanctions as necessary. FTX fails to appreciate that a limited investigation may be proper, *see* Gov't Br. 23 n.4, if a party makes "a bad faith request for an examiner," FTX Br. 36. And FTX misses the

---

[1] That acknowledged authority to shape the "scope of work and budget," FTX Br. 14, undermines the bankruptcy court's speculation that an examiner's investigation "would likely exceed $100 million," J.A. 11, even putting aside that this sort of "back-of-the-envelope forecast[]" is not a supported factual finding "entitled to deference," *In re LTL Mgmt., LLC*, 64 F.4th 84, 108 (3d Cir. 2023).

6

broader point that the threat of sanctions for filing motions with an "improper purpose, such as to harass or to cause unnecessary delay," Fed. R. Bankr. P. 9011(b)(1), acts to deter bad faith conduct in the first place, 10 Collier on Bankruptcy, *supra*, ¶ 9011.01, which may help explain why appellees have not identified any pattern of abusive practices in the Sixth Circuit, where the mandatory nature of section 1104(c)(2) has been established for more than 30 years.

There can be no debate that examiner reports have helped facilitate confirmation of chapter 11 plans in large bankruptcy cases. *See* Gov't Br. 5-6. In one of appellees' cited cases involving the chapter 11 bankruptcy of Washington Mutual, *see* FTX Br. 17 n.5; Comm. Br. 15, the examiner's investigation and report played a critical role, *see* Gov't Br. 6, despite the bankruptcy judge's initial assessment that the debtor had been "investigated to death" by the same types of entities investigating in this case, J.A. 374-75. Here, FTX and the committee similarly rely on the fact that they are currently conducting their own investigations, *see* FTX Br. 21; Comm. Br. 12-14, even though they have no legal obligation to investigate or issue findings, *see* Gov't Br. 17. At base, Congress's choice to tie appointment under section 1104(c)(2) to the magnitude of certain debts without regard to case-specific circumstances must be respected.

3. Appellees decline to defend the bankruptcy court's erroneous understanding of the legislative history. *See* FTX Br. 37-40; Comm. Br. 16-17. Our opening brief explained that section 1104 reflects a compromise in which Congress singled out a

7

class of cases—those with over $5 million in qualifying liabilities—where appointment of an examiner is obligatory. *See* Gov't Br. 15-17, 20-21. Contrary to the committee's claim that none of the legislative history cited in the government's brief "actually supports its statutory interpretation," Comm. Br. 16, the joint statement by the floor managers is replete with references to appointment being "required," "automatic[]," and "mandatory" when section 1104(c)(2)'s criteria are met in order to protect the public interest and the interests of the parties. 124 Cong. Rec. S17,403, S17,404, S17,417, S17,419 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini).

FTX does not dispute (Br. 39-40) that the floor statement is at odds with its interpretation. And it appears to acknowledge (Br. 38) that the floor statement at issue here has been treated "as persuasive evidence of congressional intent" by both the Supreme Court and this Court. *In re Calabrese*, 689 F.3d 312, 318 (3d Cir. 2012) (quoting *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 64 n.5 (1990)). FTX questions the weight to assign the floor statement in the analysis. This objection is beside the point because the legislative history simply serves to underscore what is already clear on the face of the statutory text—namely, that appointment of an examiner under section 1104(c)(2) is mandatory.

## CONCLUSION

The order of the bankruptcy court denying the U.S. Trustee's motion for appointment of an examiner should be reversed.

|  | Respectfully submitted, |
|---|---|
|  | BRIAN M. BOYNTON<br>*Principal Deputy Assistant Attorney General* |
| *Of Counsel:* | MARK B. STERN |
| RAMONA D. ELLIOTT<br>*Deputy Director/General Counsel* | /s/ Brian J. Springer<br>BRIAN J. SPRINGER |
| P. MATTHEW SUTKO<br>*Associate General Counsel* | *Attorneys, Appellate Staff*<br>*Civil Division, Room 7537* |
| FREDERICK G. HALL<br>SUMI K. SAKATA<br>*Trial Attorneys*<br>*U.S. Department of Justice*<br>*Executive Office for U.S. Trustees* | *U.S. Department of Justice*<br>*950 Pennsylvania Avenue NW*<br>*Washington, DC 20530*<br>*(202) 616-5446* |

October 2023

## COMBINED CERTIFICATIONS

1. Government counsel are not required to be members of the bar of this Court.

2. This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,048 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

3. On October 16, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

4. The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5. This document was scanned for viruses using CrowdStrike Falcon Sensor, and no virus was detected.

        *s/ Brian J. Springer*
        Brian J. Springer