Page 1

```
 1              IN THE UNITED STATES COURT OF APPEALS
 2                    FOR THE THIRD CIRCUIT
 3   FTX TRADING LTD., et al.,        )  No. 23-2297
                                      )
 4                   Appellees,       )  Philadelphia, PA
                                      )
 5   v.                               )
                                      )
 6   ANDREW R. VARA, US Trustee for   )  November 8, 2023
     Region 3,                        )
 7                                    )
                                      )
 8                   Appellant.       )
     _____)
 9
10             TRANSCRIPT OF ORAL ARGUMENT
          BEFORE THE HONORABLE L. FELIPE RESTREPO,
11          THE HONORABLE ANTHONY J. SCIRICA, and
               THE HONORABLE STEPHANOS BIBAS,
12             UNITED STATES CIRCUIT JUDGES
13
14   APPEARANCES:
15   For Appellant:           BRIAN J. SPRINGER, ESQUIRE
                              UNITED STATES DEPARTMENT OF JUSTICE
16                            950 Pennsylvania Avenue NW
                              Washington, DC 20530
17
     For the Amici Curiae
18   Law Professors:          JONATHAN C. LIPSON, ESQUIRE
                              TEMPLE UNIVERSITY
19                            BEASLEY SCHOOL OF LAW
                              1719 North Broad Street
20                            Philadelphia, Pennsylvania 19122
21   For Appellees:           JAMES L. BROMLEY, ESQUIRE
                              SULLIVAN & CROMWELL, LLP
22                            125 Broad Street
                              New York, New York 10004
23
24
25
```

```
 1   APPEARANCES (CONTINUED):
 2   For the Official
     Committee of
 3   Unsecured Creditors:      KENNETH PASQUALE, ESQUIRE
                               PAUL HASTINGS, LLP
 4                             200 Park Avenue
                               30th Floor
 5                             New York, New York 10166
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23            Veritext National Court Reporting Company
                         Mid-Atlantic Region
24             1801 Market Street - Suite 1800
                       Philadelphia, PA 19103
25                       1-888-777-6690
```

1                          I N D E X

2    ARGUMENT:                                        PAGE

3    By Mr. Springer                                    4

4    By Mr. Lipson                                     11

5    By Mr. Bromley                                    18

6    By Mr. Pasquale                                   30

7    By Mr. Springer                                   33

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1             P R O C E E D I N G S

2             UNIDENTIFIED JUDGE:  Okay.  We'll call our

3   second case, 23-2297, FTX v Vara.

4             UNIDENTIFIED JUDGE:  Mr. Springer, whenever

5   you're ready.

6             MR. SPRINGER:  Good afternoon, Your Honors, and

7   may it please the Court?  Brian Springer, on behalf of the

8   U.S. Trustee.

9             I'd like to save three minutes for rebuttal, if

10  I may?

11            UNIDENTIFIED JUDGE:  Sure.

12            MR. SPRINGER:  Congress made the judgment that

13  in bankruptcy cases involving more than $5 million in debts of

14  the type described in the statute, Bankruptcy Courts must

15  appoint an examiner to conduct an investigation, when requested.

16  As the Sixth Circuit in, In re Revco and the leading

17  bankruptcy treatise have recognized, that command is apparent

18  on the face of the statute.

19            In Section 1104, Congress specified two

20  independent conditions that trigger the appointment of an

21  examiner.  The first, in Subsection (c)(1) looks to the

22  interests of creditors and other parties.  The second, in

23  Subsection (c)(2), doesn't do that sort of interest balancing,

24  but, instead, looks to the size and types of the debts that

25  are at issue.  When either of those conditions is satisfied

1  and the other statutory prerequisites are met, the Bankruptcy

2  Court is required to appoint an examiner.

3          Our case involves Subsection (c)(2) and here,

4  there's no dispute that the prerequisites there are met.  The

5  debt threshold is met; in fact, FTX, the cryptocurrency

6  company itself has admitted that it has more than a hundred

7  million dollars in custodial funds that it owes to customers

8  just on the U.S. platform itself.  So once those conditions

9  are met, the Bankruptcy Court was required to grant this

10  appointment request.

11          UNIDENTIFIED JUDGE:  Can we make a -- sorry, go

12  ahead.

13          UNIDENTIFIED JUDGE:  Your opponents say the

14  term, as is appropriate, is important here.  What does that

15  signify in the context of the structure and the plain language

16  of the text?

17          MR. SPRINGER:  Generally, the term "as is

18  appropriate" is attached to the idea of conducting an

19  investigation.  And so what that language does is it leaves

20  the Bankruptcy Court with significant discretion to set the

21  scope, duration, and costs of the ultimate examination that's

22  been made, but it doesn't sort of stretch further back and

23  change the appointment; the appointment is mandatory and then

24  the Bankruptcy Court will look at formal proposals and decide

25  what actually needs to be investigated here.

1              UNIDENTIFIED JUDGE:  And your opponents also

2      say that if we don't agree with your position here, it will

3      cause a great deal of administrative difficulties in

4      processing the bankruptcy.  I'm not sure, is there anything

5      that the -- obviously, all big bankruptcies have a lot of

6      administrative difficulties -- is there anything that stops

7      the trustee or the bankruptcy judge from dealing with these

8      so-called difficulties?

9              MR. SPRINGER:  So, Your Honor, I think the

10     Bankruptcy Court is able through, you know, because of the "as

11     is appropriate" clause, the Bankruptcy Court has the ability

12     to sort of fashion an appropriate investigation in a case.

13             I mean, I would just point out that the Sixth

14     Circuit has decided in 1990 that this provision is mandatory

15     when there's a request for an examiner and the statutory

16     requirements are met, and we haven't seen the sort of fallout

17     that the other side is suggesting would come with recognizing

18     what the statutory text says here.

19             And I would also just note, as well, that, you

20     know, these appointments don't arise with much frequency.  I

21     can tell you that in the entire fiscal year of 2022, the U.S.

22     Trustee filed fewer than 10 of these motions; that's my

23     understanding.

24             UNIDENTIFIED JUDGE:  These motions when the

25     assets were in excess of $5 million?

1          MR. SPRINGER:  Your Honor, I believe that

2     that's correct.  It may be that it encompasses both, the

3     (c)(1) and (c)(2) cases.

4          UNIDENTIFIED JUDGE:  What do you make of your

5     colleague's concerns with respect to the costs, thereby,

6     reducing the recovery available if the judge did appoint an

7     examiner?

8          MR. SPRINGER:  So, Your Honor, I have a couple

9     of responses to that.  One response is that the Bankruptcy

10    Court will be able to look at a proposal that's made by the

11    examiner that's been appointed and make a formal decision

12    based on what the examiner eventually suggests should be

13    investigated here about what the cost and scope and duration

14    of this proceeding should be.

15          I would also just note that in many previous

16    large bankruptcy cases where examiners were appointed,

17    examiners conducted -- for example, in the In re Cred

18    bankruptcy, it was another cryptocurrency bankruptcy case,

19    that was a situation when an examiner was appointed, the

20    examiner did an eight-week investigation.  The final budget

21    was under $2 million and the bankruptcy judge expressed great

22    gratitude for the work that the examiner did.  The examiner

23    found certain facts that weren't even known to the parties,

24    including that one of the chief financial officers was a

25    fugitive from the U.K.  So these things provide value to the

Page 8

1    creditors, whether or not the examiner eventually finds, you

2    know, some kind of wrongdoing or finds specific claims that

3    can be brought or not.  This is a way of creating a more

4    efficient system.

5              UNIDENTIFIED JUDGE:  So talk about what are the

6    things that, you know, allay the absurdity concerns on the

7    other side here, what judges commonly do to minimize the delay

8    and the cost and the expense if they think doing so is

9    appropriate.

10             MR. SPRINGER:  So, Your Honor, usually, the way

11   this works is that after the appointment is made, which, it's

12   made in consultation with the parties, the examiner will go to

13   the Bankruptcy Court with a proposal of how much money this is

14   going to cost, how long it will take, and some of the topics

15   of investigation and the Bankruptcy Court will -- is able to

16   sort of set all of those things.

17             So, for example, if in a case where there's

18   some kind of necessary expediency, the Court might set a very

19   expedient timeline for this investigation to take place.  As I

20   mentioned, in the In re Cred case, there was an eight-week

21   investigation that was done.  In another cryptocurrency

22   bankruptcy case, In re Celsius, there was a four-month

23   investigation that was done and, you know, the Bankruptcy

24   Court is able to set the budget of those things and expand the

25   budget if the examiner finds things that, you know, additional

Page 9

1  things that need to be looked into as part of the examination,

2  part of the investigation.

3              UNIDENTIFIED JUDGE:  So, the bankruptcy judge

4  took great comfort in the protocols in place currently, right,

5  and that's one of the reasons he didn't appoint an examiner.

6  What do you make of that?

7              And how is -- how would it not be duplicative

8  of your Office's efforts?

9              MR. SPRINGER:  So, Your Honor, I think that

10 there are still things that could, topics that are helpful for

11 an examiner to look into here.  Maybe it would be helpful to

12 just provide a couple of examples.  For example, when Mr. Ray

13 came on as a new CEO, he made some very quick decisions about

14 which employees should be let go and which employees should

15 stay on.  And an examiner, you know, although the ousted

16 management has been blamed, there are sort of dueling

17 narratives in this case and it would be helpful and important

18 for an examiner to look into whether any of the current

19 employees, including some who formerly worked for the law firm

20 that's representing the Debtors, acted improperly,

21 particularly when there may be intercompany claims, you know,

22 different entities under the Debtor umbrella, may have claims

23 against each other.  So it's important to have an independent

24 person come in and conduct an investigation and at the end,

25 issue a report that explains what investigation was conducted

Page 10

1  and, specifically, what findings were made by the examiner,

2  which are not requirements when, you know, the Debtor or --

3  that's not a requirement that's imposed on the Debtor or the

4  Committee.

5              UNIDENTIFIED JUDGE:  So, would the reading of

6  your friends on the other side make (c)(1) surplusage or is

7  the "as is appropriate" distinguishable from the best

8  interests of the creditors?

9              MR. SPRINGER:  So, Your Honor, I think the

10  other side's reading would basically make (c)(1) surplusage

11  because -- and you can see that from the analysis that the

12  Bankruptcy Court performed here.  If you look at JA17 to 18,

13  the things that the Bankruptcy Court was flagging were exactly

14  the types of balancing of, you know, the burdens and the

15  interests of the creditors and the parties.

16              The "as is appropriate" language, of course,

17  applies to an investigation that would be conducted, whether

18  the examiner is appointed under (c)(1) or under (c)(2), but I

19  don't think that their reading of, you know, the "as is

20  appropriate" language, the way they're reading it is just to

21  sort of bring in the exact same concerns that come through

22  when someone moves under (c)(1) for an appointment.

23              So, Your Honors, if there are no further

24  questions, then I would like to reserve the remainder of my

25  time.

Page 11

1          UNIDENTIFIED JUDGE:  Sure.

2          MR. SPRINGER:  Thank you.

3          UNIDENTIFIED JUDGE:  Good afternoon.

4          MR. LIPSON:  Good afternoon, Your Honors.  May

5     it please the Court?  I am Jonathan Lipson of Temple Law

6     School, on behalf of the Amici Bankruptcy Law Professors in

7     support of the Petitioner, the United States Trustee.

8          I only have a few minutes and I only want to

9     say three things to you and then answer any questions you

10    have.  Number one, I am here today because earlier in my

11    career, I led and published two extensive empirical studies on

12    the use of bankruptcy examiners in large Chapter 11 cases, the

13    subject of today's appeal.  In all of my studies, I have never

14    seen a free fall bankruptcy this spectacular precipitated by

15    allegations of such serious misconduct that did not also have

16    an independent investigation report on the causes and

17    consequences of the Debtors' collapse by a truly independent

18    examiner trustee.  Enron, WorldCom, Lehman Brothers, New

19    Century, Revco, all had them, which means that if the

20    Bankruptcy Court's decision is affirmed today, it would be a

21    first.  It would also make a turning point in the role

22    transparency plays in Chapter 11 reorganization.

23          If the Bankruptcy Court is not reversed, then

24    Judge Dorsey will have single-handedly gutted Section 1104(c),

25    because if an examiner is not appropriate in this case, an

Page 12

1    examiner is not appropriate in any case.  Point one.

2              Point two.  Judge Dorsey, as you have already

3    indicated in your questions, believed that the Debtors' new

4    CEO John Ray, could perform the duties of an examiner.  But as

5    far as the public record is concerned, he hasn't, and as far

6    as the statute is concerned, he can't.

7              As you all know, the Mr. Ray made some very

8    strong statements about the Debtors and their founders at the

9    outset of these cases.  About eight days into the job, Mr. Ray

10   told the Bankruptcy Court, "Never in my career, have I seen

11   such a complete failure of corporate controls and such a

12   complete absence of trustworthy financial information as

13   occurred here."  Several weeks later he told Congress that FTX

14   Debtors were "a dumpster fire."

15             Assuming he's right, Mr. Ray's statements

16   require an answer to the most important question presented in

17   all free fall bankruptcies, which is this:  Where were the

18   gatekeepers?

19             Well, we know where at least one of the

20   gatekeepers is now.  Sullivan & Cromwell, the Debtors'

21   counsel, is here arguing against an independent investigation

22   and report that would answer this very question.  As we

23   explained in our brief, Sullivan & Cromwell, according to its

24   own retention pleadings, were counsel to the Debtors and

25   certain insiders, including the recently convicted Bankman-

Page 13

1    Fried before bankruptcy and were, thus, an important

2    gatekeeper.

3                    They billed at least $8 and a half million

4    in 20 transactional and regulatory matters over 16 months

5    before bankruptcy.  Now, dumpster fires, to use Mr. Ray's

6    words, are hard to hide.  So, we have to ask, did Sullivan &

7    Cromwell not see this "complete failure of corporate controls"

8    because Bankman-Fried hid it?  There was no smoke with this

9    dumpster fire?  Or did they simply look the other way?

10                    The answer matters for two reasons.  Number

11    one, the estate may have causes of action against pre-

12    bankruptcy gatekeepers, including its lawyers, just as the

13    Enron Debtors had against their pre-bankruptcy lawyers.

14    Number two, as we explained, there are critical questions

15    about Sullivan & Cromwell's role in the change of control from

16    Mr. Bankman-Fried to Mr. Ray in the days leading up to the

17    bankruptcy.

18                    If, as one reading of the evidence suggests,

19    Sullivan & Cromwell or their alumni at FTX were assuring

20    Bankman-Fried that he would play an important role in the

21    Debtors' reorganization, while simultaneously assuring that

22    that could never happen because they were inducing his

23    criminal prosecution.  Both ethical questions and contractual

24    questions arise.  If S&C knowingly mislead Bankman-Fried into

25    giving up control of the company, they may have violated

1   ethical duties of candor and the change of control may never

2   have been legally effective in the first place, which would,

3   among other things, mean that the Chapter 11 bankruptcy may

4   never have been properly commenced.

5              Now, I want to be clear, I am not accusing

6   Sullivan & Cromwell, in fact, of having committed malpractice;

7   in fact, of having violated ethical rules; in fact, of having

8   fraudulently induced Bankman-Fried to give up control of the

9   company.  I am, however, asserting that these are critical

10  questions and that they, themselves, cannot answer those

11  questions.  That, however, is what they persuaded the

12  Bankruptcy Court to do.  That is what they would have this

13  Court do, and that, to put it in statutory terms, is the

14  opposite of appropriate.

15             Point three.  Time is of the essence.  The

16  Debtors seek to propose and confirm a plan of reorganization

17  by the spring of next year.  Ordinarily, that is laudable;

18  here, however, it threatened transparency because an examiner

19  cannot be appointed after a plan of reorganization is

20  confirmed.

21             So, to provide some specificity to this Court

22  and to the lower court, our brief laid out in some detail, the

23  exact things we think would be appropriate to investigate and

24  report on here.  This is an urgent matter and we would exhort

25  this Court to reverse the Bankruptcy Court, remand, and direct

1  the Bankruptcy Court to order an examination of four very

2  specific things.

3                  UNIDENTIFIED JUDGE:  Let me stop you there.

4                  MR. LIPSON:  Please.

5                  UNIDENTIFIED JUDGE:  Is it appropriate for us

6  to tell the examiner what to examine?

7                  MR. LIPSON:  No.

8                  I think it is appropriate to tell the

9  Bankruptcy Court what the scope of the examination should be,

10  given the "as is appropriate" language of the statute.

11                  UNIDENTIFIED JUDGE:  So the "as is appropriate"

12  would go to the scope of the investigation?

13                  MR. LIPSON:  Exactly, sir.

14                  UNIDENTIFIED JUDGE:  And you would ask us to

15  give the Bankruptcy Court some direction as to what the

16  appropriate scope is?

17                  MR. LIPSON:  Exactly.  Exactly.

18                  And, you know, the concerns about cost, to be

19  clear, they're totally legitimate concerns, right.  But there

20  are very well-established ways of managing those concerns.

21  The U.S. Trustee already mentioned several of those:  a

22  budget, a time frame, in addition, having a very tailored

23  scope of investigation that doesn't duplicate the work that

24  Sullivan & Cromwell and Quinn Emanuel and Mr. Ray are doing.

25  I'm sure they're doing many things that are very valuable to

Page 16

1    the creditors that an examiner would have no business being

2    involved with.

3              But the key question, predicate to all other

4    questions is:  Where were the gatekeepers?

5              So an examiner must investigate the Debtors'

6    pre-bankruptcy gatekeepers, what role did they play in the

7    Debtors' collapse, and their role today.  That's number one:

8    gatekeepers.

9              Number two.  As we indicate in our brief, there

10   is an extraordinary secrecy in this case.  There is an

11   unprecedented number of sealed and redacted pleadings on the

12   docket of this case.  Scores.  The Reporter's Committee for

13   Freedom of the Press has appealed some of those sealing

14   orders, which is before the District Court right now.  How

15   many good reasons for that secrecy, but we don't know.  We

16   know there was a lot -- we know there was a fire.  We know

17   there was probably smoke.  We don't know anything else.  We

18   don't know who is being investigated.  We don't know what's

19   being investigated.  We don't know why.

20             And so, at minimum, number two, an examiner

21   should inspect what is sealed, inspect what is redacted, and

22   at least tell us, yes, it's okay.  There are good reasons or

23   no, there aren't.  We cannot tell at this point.

24             Number three.  Cryptocurrency assets are odd

25   assets.  We don't quite know what they are.  In the Cred case,

Page 17

1    in the Celsius case, an examiner was appointed to help the

2    parties and the Court reduce the likelihood and cost of

3    litigation over an answer to that question and, instead,

4    independently assess the nature of the assets and, as part of

5    a report, explain what examiner thought they were.  They were

6    property of the estate.  They were property of creditors.

7    Only could be one of two things.  An examiner can

8    significantly reduce the cost of litigation and fighting by

9    doing that.

10             Those are the three key things an examiner

11   should do, and then the fourth is simply write a report that

12   is publicly available, telling the investing public that

13   Congress also wanted to protect in the Chapter 11 process,

14   exactly what happened with respect to these three critical

15   questions, and to make appropriate recommendations depending

16   on what he or she finds.

17             So, in conclusion, FTX marks an inflection

18   point in the role that transparency plays in Chapter 11

19   reorganization.  To affirm the Bankruptcy Court here is to

20   ignore the plain language of the Bankruptcy Code.

21             Senator DeConcini, one of the shepherds of the

22   Bankruptcy Code, said examiners were intended by Congress to

23   investigate and report on "large cases of great public

24   interest."

25             There has never been a larger free fall case of

1    greater public interest than FTX.  For these reasons, the

2    Bankruptcy Court must be reversed.

3                    UNIDENTIFIED JUDGE:  Thank you very much.

4                    MR. LIPSON:  Thank you.

5                    UNIDENTIFIED JUDGE:  Good afternoon, Mr.

6    Bromley.

7                    MR. BROMLEY:  I'm just going to start my clock

8    here so I know what time I've got here.  Thank you.

9                    Your Honors, thank you very much for the time

10   today, James Bromley of Sullivan & Cromwell, on behalf of the

11   Appellees, FTX Trading Ltd. and its affiliated Debtors.

12                   Your Honors, I'm going to first address the

13   arguments that have been made by the Office of the United

14   States Trustee and then I will briefly address the arguments made

15   by the Amici.  Your Honor -- Your Honors, there are two

16   sections that are at play here, Section 1104 and Section 1106

17   of the Bankruptcy Code.  One cannot read Section 1104, which

18   is about the duties of an examiner without looking at 1106, as

19   to what is an examiner.

20                   And it's important, Your Honors, because the

21   U.S. Trustee sitting here today in November of 2023, less than

22   one year, almost to the day, but just short of one year since

23   FTX collapsed and filed its bankruptcy, what the United States

24   Trustee's Office is not focusing on is the process that they

25   just suggested to Your Honors does not exist in the Bankruptcy

1    Code or Rules.  The idea that there should be a motion to

2    appoint an examiner and then the judge makes a determination

3    that an examiner should be appointed, the statute in 1104

4    says, "on notice and a hearing."  Right?

5                      So there has to be notice.  There has to be a

6    hearing.  And the phrase "as is appropriate" has to mean

7    something.

8                      You relate back, "as is appropriate," not just

9    to examiner investigation; you also refer back to "notice and

10   a hearing."  The process that the United States Trustee just

11   set forth to Your Honors is that there is no determination

12   whatsoever if the $5 million threshold is met, which we agree

13   has been met in this case.

14                      Their view is, you go to the Court and say,

15   Judge Dorsey, appoint an examiner, $5 million, and then we

16   will come back and ask the Court to determine the scope and

17   the identity of that examiner.

18                      The United States Trustee disconnects this

19   second step from 1104.

20                      UNIDENTIFIED JUDGE:  1104 just says, "after

21   notice and hearings" set off by commas.  So you can use the

22   hearing to determine was it, in fact, $5 million involved, or

23   under (c)(1), is it, in fact, in the interest of the

24   creditors.

25                      But "as is appropriate" is at the end of that

Page 20

1    phrase.  The last antecedent most naturally refers back to

2    what's right before it, "such an investigation, the Court

3    shall order him to conduct such an investigation, as is

4    appropriate."

5              MR. BROMLEY:  That is correct, Your Honor.

6              But if I may, if I can get to the fact that

7    what happened in this circumstance was that there was a

8    pretrial order entered by Judge Dorsey.  That pretrial order

9    laid out the issues that Judge Dorsey was going to deal with

10   at the hearing.  It was entered by Judge Dorsey.  It was

11   agreed to by the U.S. Trustee's Office and by the Debtors and

12   the Creditors Committee.

13             One of the issues that was supposed to be

14   raised at that hearing was the scope of the appointment.  The

15   motion that the U.S. Trustee made said nothing about scope,

16   nothing about anything that would allow the Court to determine

17   what might be appropriate under the circumstances, right.  So

18   when we got to the hearing, the burden of proof was on the

19   U.S. Trustee's Office to say why would it be appropriate?  Why

20   would anything be appropriate?

21             So what we have here is Judge Dorsey, as the

22   U.S. Trustee agrees in their papers, made a determination not

23   just that an examiner wasn't necessary, but that an

24   investigation wasn't necessary.

25             UNIDENTIFIED JUDGE:  But the statute doesn't

Page 21

1    give him that power.

2                    MR. BROMLEY:  Yes, it does, Your Honor.

3                    UNIDENTIFIED JUDGE:  It says, "shall."

4                    MR. BROMLEY:  "Shall appoint to conduct an

5    investigation, as is appropriate."

6                    UNIDENTIFIED JUDGE:  "Shall" becomes "may."

7                    MR. BROMLEY:  Shall appoint --

8                    UNIDENTIFIED JUDGE:  1104(a) uses discretionary

9    language.  1104(c) doesn't.

10                    How does your reading avoid making "shall" into

11   "may"?

12                    MR. BROMLEY:  You cannot read out "as is

13   appropriate."  "Shall" is not simply -- if it was, if "as is

14   appropriate" didn't belong there, it would have stopped.

15                    UNIDENTIFIED JUDGE:  But isn't that the -- what

16   is appropriate in the investigation?  Not the appointment

17   being appropriate.

18                    MR. BROMLEY:  The judge here, Judge Dorsey,

19   made factual findings based on a complete factual record of

20   testimony, witnesses with the ability to cross-examine, the

21   ability to take depositions, which were not taken by the

22   United States Trustee's Office, unrebutted factual testimony

23   that there are investigations that were going on.  There were

24   other investigations which were being conducted, not just by

25   the Debtors and the Creditors Committee, but by the Department

Page 22

1    of Justice, with respect to the criminal activity in the

2    Southern District of New York, which has led to four pleas in

3    an 18-day trial, which concluded last week.

4                    UNIDENTIFIED JUDGE:  You haven't answered the

5    question.  How does your reading avoid making "shall" into

6    "may"?

7                    MR. BROMLEY:  Because the question, Your

8    Honors, is whether or not an investigation is appropriate.

9                    UNIDENTIFIED JUDGE:  Could the statute mean

10   anything different on your reading if it said, instead of

11   "shall order an investigation," "may order an investigation,

12   as appropriate," can you point to any situation that would be

13   covered by the statute that avoids -- that finds some semantic

14   difference between those two?

15                   MR. BROMLEY:  With the addition of "as is

16   appropriate" and "shall," it becomes a question of whether or

17   not there's an investigation that can take place.  And that's

18   why it's important to go back to 1106, Your Honors, right,

19   because 1106 defines what an examiner is.

20                   UNIDENTIFIED JUDGE:  But doesn't it say

21   "shall" -- isn't it "shall" -- he has to appoint an

22   appointment -- an examiner, as appropriate, but he has to

23   appoint the examiner.

24                   MR. BROMLEY:  Your Honor, you need to take a

25   look at 1106 if you don't mind, right.  1106 talks about two

Page 23

1    types of examiners.  1106(b) talks about, one, an examiner who

2    investigates and reports; that's examiner one.  It also talks

3    about an examiner who takes on the duties of the trustee that

4    the Court orders the Debtor-in-possession not to perform.

5              There are two types of examiners under the

6    statute.  That is not addressed at all by the United States

7    Trustee's Office.  So when you take conducting an

8    investigation and put it into 1104, you are recognizing that

9    there are two types of examiners that are set forth in the

10   statute under 1106(b).  Investigate and report, examiner one,

11   and examiner two, which we in the bankruptcy practice, refer

12   to as an "examiner with expanded powers" is an examiner that

13   must -- there's no discretion here.

14             If the Court decides that a Debtor-in-

15   possession should not have any duties of a trustee, and this

16   is where we have to go to the statutory construct.  We're

17   talking about how the Bankruptcy Code is operates.  If the

18   Bankruptcy Court takes any duties of a trustee away from a

19   Debtor-in-possession, they have to go to the examiner.

20             Here, we're talking about an examiner that

21   investigates and reports.  And I agree, that is the vast

22   majority of examiners.

23             UNIDENTIFIED JUDGE:  So, does your copy of the

24   U.S. Code have examiner prime and double-prime at 1106,

25   because I don't see a different term used for these two

Page 24

1    supposedly different examiners.

2              MR. BROMLEY:  Well, that's because you have to,

3    then, look at 1104 and the language in 1104 --

4              UNIDENTIFIED JUDGE:  Okay.  Are they printed in

5    different colors in your edition, because I don't see any

6    colors or primes or any other difference between these terms

7    that you want to desegregate.

8              MR. BROMLEY:  Your Honor, to give context to

9    conduct an investigation of the Debtor as is appropriate, an

10   examiner to conduct an investigation of the Debtor as is

11   appropriate.  The only way that that phrase has meaning is to

12   look at what an examiner is.  1106 is what tells you what an

13   examiner is.  So that's simply providing the definitional

14   aspect of what "examiner" is described under 1104(c).

15             Now, Your Honors, if I could talk for a moment

16   about the absurdity issues that we're facing here, because

17   there are several things that the United States Trustee takes

18   issue with respect to absurdity.  One is that what we have is

19   a situation that allows the Bankruptcy Court to determine at

20   some later date under a process that doesn't yet -- that they

21   refer to as "existing" that doesn't exist -- that the scope of

22   the investigation should be able to be determined by the

23   Court, but it cannot be zero.

24             Well, Your Honors, what has happened in

25   circuits like the Fifth Circuit where the courts have decided

Page 25

1  not to reach the issue of whether it's mandatory, they have

2  simply said, and as Judge Glenn has said, as well, in the

3  Southern District of New York, You know what I'm going to do?

4  I'm going to appoint an examiner and I'm going to either give

5  no responsibilities or very limited responsibilities, a

6  limited budget, and a limited time frame.

7            And so as Judge Sontchi said, and this is an

8  issue, too, because the District of Delaware has never, at the

9  Bankruptcy Court level, ever found that there's anything but

10  discretion, and this goes back 25 years.

11            UNIDENTIFIED JUDGE:  Discretion to a point or

12  discretion to define the terms of the examination?

13            MR. BROMLEY:  Well, Your Honor, I think they

14  fold into each other, but I think that if you go back and look

15  at the bench decisions, it is discretion to appoint.

16            If you look at what Judge Dorsey said in this

17  decision, it's the discretion to frame the investigation, as

18  well as to appoint.

19            UNIDENTIFIED JUDGE:  I'd like to hear you

20  respond to Professor Lipson's point that in every other major

21  bankruptcy, there's been an examiner.  This would be the first

22  one that wouldn't have one.

23            MR. BROMLEY:  Your Honor, this --

24            UNIDENTIFIED JUDGE:  Is he wrong?

25            MR. BROMLEY:  Yes.

Page 26

1              UNIDENTIFIED JUDGE:  Okay.  Cite me one.

2              MR. BROMLEY:  Because here's the situation,

3     he's wrong with the context and how he frames it, Your Honor.

4              UNIDENTIFIED JUDGE:  Which one?  Give me the

5     name of the bankruptcy.

6              MR. BROMLEY:  This one.

7              UNIDENTIFIED JUDGE:  Okay.  I'm asking for

8     another case.

9              MR. BROMLEY:  No, but if I could give you the

10    reason, Your Honor --

11             UNIDENTIFIED JUDGE:  No, I've asked, is the

12    answer that you don't have another one to cite to contradict

13    the learned Professor Lipson?

14             MR. BROMLEY:  I don't have another case, other

15    than this one.  But if I may explain the factual distinctions,

16    Your Honor?

17             Right.  Not in any of those other cases, many

18    of which I was involved in, was the factual situation the same

19    as it was here.  We cannot ignore the fact, yes, FTX was a

20    problem; yes, it was a dumpster fire; yes, it was a free fall

21    bankruptcy.

22             UNIDENTIFIED JUDGE:  What about the conflict of

23    interest?

24             MR. BROMLEY:  If I -- first of all, Your Honor,

25    the conflict of interest does not exist.  Judge Dorsey held an

Page 27

1    evidentiary hearing with respect to the retention of my law

2    firm.

3                    The United States Trustee had objected to that

4    retention.  The United States Trustee, notwithstanding my

5    colleague's comments, withdrew their objection and supported

6    our retention.

7                    With millions of creditors in this case, two

8    continued their objection.  Based on that factual

9    determination, Judge Dorsey found that we did not have any

10   issues and all of the things that the learned professor just

11   mentioned are res judicata in favor of the estate and in favor

12   of my firm.

13                   There is not an issue before this Court to look

14   at whether or not there was a conflict of interest, because it

15   has been judicially determined with evidence already.

16                   UNIDENTIFIED JUDGE:  You mean law of the case,

17   not res judicata.  Law of the case is a flexible doctrine.

18                   Go ahead.

19                   MR. BROMLEY:  But we did have a hearing.  We

20   had factual determinations.  An order was entered.  The time

21   to appeal that order has passed and the learned professor had

22   the opportunity, if he wanted to show up as a friend of that

23   Court.  He did not.  The fact is that that is simply for

24   publicity consumption.

25                   What has happened in the year since this case

1    was filed, Your Honors, is that everything that was

2    represented to the Court in February of 2023 has occurred.

3    There have been substantial reports that have been written and

4    delivered by the estate.  Mr. Ray was found to be, by Judge

5    Dorsey, to be independent and eminently qualified, as was his

6    independent board of directors.

7              There was an 18-day trial when Mr. Bankman-

8    Fried was convicted in less than four hours, including dinner,

9    on Wednesday of last week.

10             What we have, Your Honors, is a situation from

11   a factual perspective, which is distinct from Lehman, from

12   Enron, from WorldCom.  This -- the management team that

13   existed pre-filing was removed in its entirety; the entire

14   head was cut off.

15             The individuals that were installed are highly

16   qualified, independent, found on the evidence by Judge Dorsey

17   to be so.  They have conducted investigations and are

18   continuing to conduct investigations.  There have been

19   voluminous public reports filed.  The Securities and Exchange

20   Commission is conducting investigations, the CFTC, Congress,

21   and the Department of Justice.

22             Four pleas and one substantial conviction after

23   one of the trials of the decade.  When we -- I was sitting

24   there last week and listening to Damion Williams, the U.S.

25   Attorney for the Southern District of New York, standing on

Page 29

1   the steps of the courthouse, what did he say?  He said, we are

2   relentless.  This is what relentless looks like.  We have gone

3   after this.  People in cybercrime, you need to understand this

4   is what's going to happen to you.  We have plenty of handcuffs

5   for everyone.

6            The full power of the United States Government,

7   the Southern District of New York U.S. Attorney's Office, and

8   the FBI, both of which were commented on by U.S. Attorney

9   Williams, were brought to bear to investigate this very case.

10           The only absurd result that we're talking about

11  here is that the same Department of Justice, who's sitting

12  here today, pretending that none of that has happened.  The

13  fact of the matter is that Judge Dorsey gave them the

14  opportunity to sketch out the scope and the U.S. Trustee stood

15  up in court and said, I want to boil the ocean.  I want

16  everything from the top to bottom, to side to side, and Judge

17  Dorsey said that's going to cost a hundred million dollars,

18  are you sure that's what you want?  Absolutely, the U.S.

19  Trustee said.  And the U.S. Trustee said, You must appoint

20  that examiner.

21           Your Honors, that's simply not the law.  It

22  makes no sense, but more importantly, it doesn't comport with

23  the language of 1104 and 1106.

24           UNIDENTIFIED JUDGE:  Thank you.

25           MR. BROMLEY:  Thank you, Your Honors.

Page 30

1                    UNIDENTIFIED JUDGE:  Good afternoon.

2                    MR. PASQUALE:  Good afternoon, Your Honor.  Ken

3     Pasquale from Paul Hastings for the official Creditors

4     Committee.

5                    I'm thinking about where to start, Your Honor,

6     given the questions, given some of the comments.

7                    UNIDENTIFIED JUDGE:  Start with "shall."

8          (Laughter.)

9                    MR. PASQUALE:  Excuse me?

10                   UNIDENTIFIED JUDGE:  Why don't we start with

11    "shall"?

12                   MR. PASQUALE:  "Shall" can be read as "may."

13    The Debtors have cited some authority in their brief.  In this

14    case, the only way, frankly, to read the statute in a logical

15    way is to read it in that fashion; otherwise, we do get, Your

16    Honor, to the absurd result.

17                   Mr. Bromley mentioned one example of that

18    absurdity.  I think the other example of the absurdity is you

19    don't have to have a fraud or mismanagement or any

20    impropriety.  If you leave that part of the statute out, all

21    that a party in interest has to do is raise their hand, make

22    the motion in a case like this where the qualified unsecured

23    debt is over $5 million, end of story.  There doesn't have to

24    be, under that rationale, any reason for the examiner to be

25    appointed.  That seems to me to be classic absurdity.  The

1  statute cannot logically be read that way.

2          Your Honor asked for some examples --

3          UNIDENTIFIED JUDGE:  There's some language --

4          MR. PASQUALE:  Yes, I'm sorry.

5          UNIDENTIFIED JUDGE:  -- in the U.S. Trustee's

6  brief that delineates what went on in the legislative back-

7  and-forth when this provision was being written and it seems

8  that certain members of Congress were quite concerned that a

9  bankruptcy of this magnitude needed special rules.

10         Am I wrong on that?

11         MR. PASQUALE:  Well, I think, I wouldn't say

12 you're wrong, Your Honor.  I think there is not, really, any

13 clarity in that legislative history.  I don't think, in this

14 sense, that it adds anything to the analysis, frankly.  You

15 know, in certain circumstances, of course, in interpreting

16 statutes, it could, I just don't think that's the case here.

17         I wanted to direct -- try to answer Your

18 Honor's question.  There are many cases where examiners are

19 not appointed when there are, in fact, fraud.  I'll give you a

20 couple that come to mind.  I just was thinking about it since

21 you asked.  There's the McClatchy case, a newspaper, in the

22 Southern District of New York, over a billion dollars in debt.

23 The Creditors Committee, which my firm, my prior firm and my

24 current colleagues represented that Committee, did the

25 investigation.  Two crypto cases now pending in the Southern

Page 32

1    District of New York:  Voyager and Genesis.  No examiners in

2    either of those cases.  I could come up with others, but it is

3    not in every case, Your Honor, for certain.

4              The comments that we heard from, especially,

5    the Amici is as if our Committee does not exist.  Our

6    Committee has a statutory authority to investigate.

7    Section 1103(c)(2) of the Code provides a non-exclusive list

8    of duties for a Committee, including an investigation of the

9    acts, conduct, and financial condition.

10             This Committee has participated over the last

11   year, from the very moment it was appointed, in the

12   investigations with the Debtors, across all of the issues

13   important in this case, and that includes the prepetition

14   business.  That, frankly, includes Debtors' counsel and some

15   of the allegations we heard today.  All of that has been, and

16   is being considered and investigated by not only the Debtors,

17   by the Committee.

18             I do take a little umbrage as I hear some of

19   the comments, as if the Committee has done nothing for the

20   last year.  It is in the record, Your Honor, you can see, but

21   I have to say it, as well.  Our Committee has that duty.  We

22   take our financial -- excuse me -- our fiduciary duties very

23   seriously and so I think all of the things we heard about,

24   rest assured, they are all being looked at.

25             UNIDENTIFIED JUDGE:  Let me go back to those

1  examples that you cited for us.

2           MR. PASQUALE:  Yes, of course, Your Honor.

3           UNIDENTIFIED JUDGE:  Was there a request made

4  for an examiner?

5           MR. PASQUALE:  I'm not aware if there was.

6           UNIDENTIFIED JUDGE:  Probably not.

7           MR. PASQUALE:  I was trying to think of large

8  cases where there hasn't been one.  I can say, again, citing

9  back to McClatchy, the Committee did the investigation.

10           UNIDENTIFIED JUDGE:  Was there a request for an

11  examiner?

12           MR. PASQUALE:  I don't know, off the top of my

13  head, Your Honor, I'm sorry.

14           Your Honor, I see my time is up.  Unless

15  there's more questions, those were really the main points I

16  wanted to make.

17           UNIDENTIFIED JUDGE:  Thank you.

18           MR. PASQUALE:  Thank you.

19           MR. SPRINGER:  Thank you, Your Honors.

20           I'd just like to make three very quick points.

21  The first is just to return to the text and the legislative

22  history, which I think are both very clear that this is a

23  "shall" command and that the "shall" applies to the

24  appointment of the examiner.  And maybe just to give, as well,

25  a word about how this normally plays out in practice, there's

Page 34

1    typically a motion that's made to appoint the examiner.  There

2    can be a notice and hearing if there are questions about

3    whether, for example, the $5 million limit is met.  Here, that

4    wasn't disputed.

5                Once the appointment is made, the U.S. Trustee

6    will actually pick a person and that person will come in and

7    suggest, Here's the scope of things that I would like to look

8    at.  The Bankruptcy Court will examine that proposal and then

9    set, as I mentioned before, these things about scope, budget,

10   and duration, as necessary, in each individual case.  So, that

11   was the first point.

12               The second point is that I think the other side

13   spoke about Section 1106.  I don't think that Section 1106

14   changes anything.  Section 1106 provides that, a minimum, what

15   the examiner will do is conduct this investigation and issue a

16   report with the findings at the end of that investigation.

17   And then the Bankruptcy Court has authority to add additional

18   duties to the examiner that normally a trustee would be

19   performing.  So, that's point two.

20               And then as just my final point, I just want to

21   make clear that we didn't specifically support the retention

22   of any firm in this case.  We objected to it, or the U.S.

23   Trustee's Program objected to it.  And these -- this motion,

24   the motion for the appointment of an examiner was sort of

25   connected with that.  The U.S. Trustee wanted an independent

Page 35

1   person to come in and conduct an investigation and believed

2   that this is -- that the text requires that there's that

3   independent examination in these cases.

4             Your Honors, if there are no further questions,

5   we would ask that this Court reverse the Bankruptcy Court's

6   order.

7             UNIDENTIFIED JUDGE:  Thank you.

8             MR. SPRINGER:  Thank you.

9             UNIDENTIFIED JUDGE:  We thank all counsel for

10  their arguments and briefs.  We will take this matter under

11  advisement.

12      (Whereupon, this hearing concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3          I, William J. Garling, approved court transcriber,

4    certifies that the foregoing transcript is a true and accurate

5    record of the proceedings.

6

7    _____

8    William J. Garling

9    Approved Court Transcriber

10

11   Date:  November 27, 2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## &

**&**   1:21 12:20
   12:23 13:6,15
   13:19 14:6
   15:24 18:10

## 1

**1**   4:21 7:3 10:6
   10:10,18,22
   19:23
**1-888-777-6...**
   2:25
**10**   6:22
**10004**   1:22
**10166**   2:5
**11**   3:4 11:12,22
   14:3 17:13,18
**1103**   32:7
**1104**   4:19
   11:24 18:16,17
   19:3,19,20
   21:8,9 23:8
   24:3,3,14
   29:23
**1106**   18:16,18
   22:18,19,25,25
   23:1,10,24
   24:12 29:23
   34:13,13,14
**125**   1:22
**16**   13:4
**1719**   1:19
**18**   3:5 10:12
   22:3 28:7
**1800**   2:24

**1801**   2:24
**19103**   2:24
**19122**   1:20
**1990**   6:14

## 2

**2**   4:23 5:3 7:3
   7:21 10:18
   32:7
**20**   13:4
**200**   2:4
**2022**   6:21
**2023**   1:6 18:21
   28:2 36:11
**20530**   1:16
**23-2297**   1:3 4:3
**25**   25:10
**27**   36:11

## 3

**3**   1:6
**30**   3:6
**30th**   2:4
**33**   3:7

## 4

**4**   3:3

## 5

**5**   4:13 6:25
   19:12,15,22
   30:23 34:3

## 8

**8**   1:6 13:3

## 9

**950**   1:16

## a

**ability**   6:11
   21:20,21
**able**   6:10 7:10
   8:15,24 24:22
**absence**   12:12
**absolutely**
   29:18
**absurd**   29:10
   30:16
**absurdity**   8:6
   24:16,18 30:18
   30:18,25
**accurate**   36:4
**accusing**   14:5
**acted**   9:20
**action**   13:11
**activity**   22:1
**acts**   32:9
**actually**   5:25
   34:6
**add**   34:17
**addition**   15:22
   22:15
**additional**   8:25
   34:17
**address**   18:12
   18:14
**addressed**   23:6
**adds**   31:14
**administrative**
   6:3,6

**admitted**   5:6
**advisement**
   35:11
**affiliated**   18:11
**affirm**   17:19
**affirmed**   11:20
**afternoon**   4:6
   11:3,4 18:5
   30:1,2
**agree**   6:2 19:12
   23:21
**agreed**   20:11
**agrees**   20:22
**ahead**   5:12
   27:18
**al**   1:3
**allay**   8:6
**allegations**
   11:15 32:15
**allow**   20:16
**allows**   24:19
**alumni**   13:19
**amici**   1:17 11:6
   18:15 32:5
**analysis**   10:11
   31:14
**andrew**   1:6
**answer**   11:9
   12:16,22 13:10
   14:10 17:3
   26:12 31:17
**answered**   22:4
**antecedent**
   20:1

anthony  1:11
apparent  4:17
appeal  11:13
  27:21
appealed  16:13
appeals  1:1
appearances
  1:14 2:1
appellant  1:8
  1:15
appellees  1:4
  1:21 18:11
applies  10:17
  33:23
appoint  4:15
  5:2 7:6 9:5
  19:2,15 21:4,7
  22:21,23 25:4
  25:15,18 29:19
  34:1
appointed  7:11
  7:16,19 10:18
  14:19 17:1
  19:3 30:25
  31:19 32:11
appointment
  4:20 5:10,23
  5:23 8:11
  10:22 20:14
  21:16 22:22
  33:24 34:5,24
appointments
  6:20
appropriate
  5:14,18 6:11

6:12 8:9 10:7
10:16,20 11:25
12:1 14:14,23
15:5,8,10,11,16
17:15 19:6,8
19:25 20:4,17
20:19,20 21:5
21:13,14,16,17
22:8,12,16,22
24:9,11
approved  36:3
  36:9
arguing  12:21
argument  1:10
  3:2
arguments
  18:13,14 35:10
asked  26:11
  31:2,21
asking  26:7
aspect  24:14
asserting  14:9
assess  17:4
assets  6:25
  16:24,25 17:4
assuming  12:15
assured  32:24
assuring  13:19
  13:21
atlantic  2:23
attached  5:18
attorney  28:25
  29:8
attorney's  29:7

authority  30:13
  32:6 34:17
available  7:6
  17:12
avenue  1:16 2:4
avoid  21:10
  22:5
avoids  22:13
aware  33:5

**b**

b  23:1,10
back  5:22 19:8
  19:9,16 20:1
  22:18 25:10,14
  31:6 32:25
  33:9
balancing  4:23
  10:14
bankman
  12:25 13:8,16
  13:20,24 14:8
  28:7
bankruptcies
  6:5 12:17
bankruptcy
  4:13,14,17 5:1
  5:9,20,24 6:4,7
  6:10,11 7:9,16
  7:18,18,21
  8:13,15,22,23
  9:3 10:12,13
  11:6,12,14,20
  11:23 12:10
  13:1,5,12,13,17
  14:3,12,25

15:1,9,15 16:6
17:19,20,22
18:2,17,23,25
23:11,17,18
24:19 25:9,21
26:5,21 31:9
34:8,17 35:5
based  7:12
  21:19 27:8
basically  10:10
bear  29:9
beasley  1:19
behalf  4:7 11:6
  18:10
believe  7:1
believed  12:3
  35:1
belong  21:14
bench  25:15
best  10:7
bibas  1:11
big  6:5
billed  13:3
billion  31:22
blamed  9:16
board  28:6
boil  29:15
bottom  29:16
brian  1:15 4:7
brief  12:23
  14:22 16:9
  30:13 31:6
briefly  18:14
briefs  35:10

**bring** 10:21
**broad** 1:19,22
**bromley** 1:21
  3:5 18:6,7,10
  20:5 21:2,4,7
  21:12,18 22:7
  22:15,24 24:2
  24:8 25:13,23
  25:25 26:2,6,9
  26:14,24 27:19
  29:25 30:17
**brothers** 11:18
**brought** 8:3
  29:9
**budget** 7:20
  8:24,25 15:22
  25:6 34:9
**burden** 20:18
**burdens** 10:14
**business** 16:1
  32:14

**c**

**c** 1:18 4:1,21,23
  5:3 7:3,3 10:6
  10:10,18,18,22
  11:24 19:23
  21:9 24:14
  32:7 36:1,1
**call** 4:2
**called** 6:8
**candor** 14:1
**career** 11:11
  12:10
**case** 4:3 5:3
  6:12 7:18 8:17

8:20,22 9:17
11:25 12:1
16:10,12,25
17:1,25 19:13
26:8,14 27:7
27:16,17,25
29:9 30:14,22
31:16,21 32:3
32:13 34:10,22
**cases** 4:13 7:3
  7:16 11:12
  12:9 17:23
  26:17 31:18,25
  32:2 33:8 35:3
**cause** 6:3
**causes** 11:16
  13:11
**celsius** 8:22
  17:1
**century** 11:19
**ceo** 9:13 12:4
**certain** 7:23
  12:25 31:8,15
  32:3
**certifies** 36:4
**cftc** 28:20
**change** 5:23
  13:15 14:1
**changes** 34:14
**chapter** 11:12
  11:22 14:3
  17:13,18
**chief** 7:24
**circuit** 1:2,12
  4:16 6:14

24:25
**circuits** 24:25
**circumstance**
  20:7
**circumstances**
  20:17 31:15
**cite** 26:1,12
**cited** 30:13
  33:1
**citing** 33:8
**claims** 8:2 9:21
  9:22
**clarity** 31:13
**classic** 30:25
**clause** 6:11
**clear** 14:5
  15:19 33:22
  34:21
**clock** 18:7
**code** 17:20,22
  18:17 19:1
  23:17,24 32:7
**collapse** 11:17
  16:7
**collapsed** 18:23
**colleague's** 7:5
  27:5
**colleagues**
  31:24
**colors** 24:5,6
**come** 6:17 9:24
  10:21 19:16
  31:20 32:2
  34:6 35:1

**comfort** 9:4
**command** 4:17
  33:23
**commas** 19:21
**commenced**
  14:4
**commented**
  29:8
**comments** 27:5
  30:6 32:4,19
**commission**
  28:20
**committed** 14:6
**committee** 2:2
  10:4 16:12
  20:12 21:25
  30:4 31:23,24
  32:5,6,8,10,17
  32:19,21 33:9
**commonly** 8:7
**company** 2:23
  5:6 13:25 14:9
**complete** 12:11
  12:12 13:7
  21:19
**comport** 29:22
**concerned** 12:5
  12:6 31:8
**concerns** 7:5
  8:6 10:21
  15:18,19,20
**concluded** 22:3
  35:12
**conclusion**
  17:17

condition   32:9
conditions   4:20
  4:25 5:8
conduct   4:15
  9:24 20:3 21:4
  24:9,10 28:18
  32:9 34:15
  35:1
conducted   7:17
  9:25 10:17
  21:24 28:17
conducting
  5:18 23:7
  28:20
confirm   14:16
confirmed
  14:20
conflict   26:22
  26:25 27:14
congress   4:12
  4:19 12:13
  17:13,22 28:20
  31:8
connected
  34:25
consequences
  11:17
considered
  32:16
construct   23:16
consultation
  8:12
consumption
  27:24

context   5:15
  24:8 26:3
continued   2:1
  27:8
continuing
  28:18
contractual
  13:23
contradict
  26:12
control   13:15
  13:25 14:1,8
controls   12:11
  13:7
convicted
  12:25 28:8
conviction
  28:22
copy   23:23
corporate
  12:11 13:7
correct   7:2
  20:5
cost   7:13 8:8,14
  15:18 17:2,8
  29:17
costs   5:21 7:5
counsel   12:21
  12:24 32:14
  35:9
couple   7:8 9:12
  31:20
course   10:16
  31:15 33:2

court   1:1 2:23
  4:7 5:2,9,20,24
  6:10,11 7:10
  8:13,15,18,24
  10:12,13 11:5
  11:23 12:10
  14:12,13,21,22
  14:25,25 15:1
  15:9,15 16:14
  17:2,19 18:2
  19:14,16 20:2
  20:16 23:4,14
  23:18 24:19,23
  25:9 27:13,23
  28:2 29:15
  34:8,17 35:5
  36:3,9
court's   11:20
  35:5
courthouse
  29:1
courts   4:14
  24:25
covered   22:13
creating   8:3
cred   7:17 8:20
  16:25
creditors   2:3
  4:22 8:1 10:8
  10:15 16:1
  17:6 19:24
  20:12 21:25
  27:7 30:3
  31:23

criminal   13:23
  22:1
critical   13:14
  14:9 17:14
cromwell   1:21
  12:20,23 13:7
  13:19 14:6
  15:24 18:10
cromwell's
  13:15
cross   21:20
crypto   31:25
cryptocurrency
  5:5 7:18 8:21
  16:24
curiae   1:17
current   9:18
  31:24
currently   9:4
custodial   5:7
customers   5:7
cut   28:14
cybercrime
  29:3

**d**

d   3:1 4:1
damion   28:24
date   24:20
  36:11
day   18:22 22:3
  28:7
days   12:9 13:16
dc   1:16
deal   6:3 20:9

**dealing** 6:7
**debt** 5:5 30:23
 31:22
**debtor** 9:22
 10:2,3 23:4,14
 23:19 24:9,10
**debtors** 9:20
 11:17 12:3,8
 12:14,20,24
 13:13,21 14:16
 16:5,7 18:11
 20:11 21:25
 30:13 32:12,14
 32:16
**debts** 4:13,24
**decade** 28:23
**decide** 5:24
**decided** 6:14
 24:25
**decides** 23:14
**decision** 7:11
 11:20 25:17
**decisions** 9:13
 25:15
**deconcini**
 17:21
**define** 25:12
**defines** 22:19
**definitional**
 24:13
**delaware** 25:8
**delay** 8:7
**delineates** 31:6
**delivered** 28:4

**department**
 1:15 21:25
 28:21 29:11
**depending**
 17:15
**depositions**
 21:21
**described** 4:14
 24:14
**desegregate**
 24:7
**detail** 14:22
**determination**
 19:2,11 20:22
 27:9
**determinations**
 27:20
**determine**
 19:16,22 20:16
 24:19
**determined**
 24:22 27:15
**difference**
 22:14 24:6
**different** 9:22
 22:10 23:25
 24:1,5
**difficulties** 6:3
 6:6,8
**dinner** 28:8
**direct** 14:25
 31:17
**direction** 15:15
**directors** 28:6

**disconnects**
 19:18
**discretion** 5:20
 23:13 25:10,11
 25:12,15,17
**discretionary**
 21:8
**dispute** 5:4
**disputed** 34:4
**distinct** 28:11
**distinctions**
 26:15
**distinguishable**
 10:7
**district** 16:14
 22:2 25:3,8
 28:25 29:7
 31:22 32:1
**docket** 16:12
**doctrine** 27:17
**doing** 8:8 15:24
 15:25 17:9
**dollars** 5:7
 29:17 31:22
**dorsey** 11:24
 12:2 19:15
 20:8,9,10,21
 21:18 25:16
 26:25 27:9
 28:5,16 29:13
 29:17
**double** 23:24
**dueling** 9:16
**dumpster**
 12:14 13:5,9

 26:20
**duplicate** 15:23
**duplicative** 9:7
**duration** 5:21
 7:13 34:10
**duties** 12:4
 14:1 18:18
 23:3,15,18
 32:8,22 34:18
**duty** 32:21

| e |
| --- |

**e** 3:1 4:1,1 36:1
**earlier** 11:10
**edition** 24:5
**effective** 14:2
**efficient** 8:4
**efforts** 9:8
**eight** 7:20 8:20
 12:9
**either** 4:25 25:4
 32:2
**emanuel** 15:24
**eminently** 28:5
**empirical** 11:11
**employees** 9:14
 9:14,19
**encompasses**
 7:2
**enron** 11:18
 13:13 28:12
**entered** 20:8,10
 27:20
**entire** 6:21
 28:13

entirety 28:13
entities 9:22
especially 32:4
esquire 1:15,18
  1:21 2:3
essence 14:15
established
  15:20
estate 13:11
  17:6 27:11
  28:4
et 1:3
ethical 13:23
  14:1,7
eventually 7:12
  8:1
evidence 13:18
  27:15 28:16
evidentiary
  27:1
exact 10:21
  14:23
exactly 10:13
  15:13,17,17
  17:14
examination
  5:21 9:1 15:1,9
  25:12 35:3
examine 15:6
  21:20 34:8
examiner 4:15
  4:21 5:2 6:15
  7:7,11,12,19,20
  7:22,22 8:1,12
  8:25 9:5,11,15

9:18 10:1,18
11:18,25 12:1
12:4 14:18
15:6 16:1,5,20
17:1,5,7,10
18:18,19 19:2
19:3,9,15,17
20:23 22:19,22
22:23 23:1,2,3
23:10,11,12,12
23:19,20,24
24:10,12,13,14
25:4,21 29:20
30:24 33:4,11
33:24 34:1,15
34:18,24
examiners 7:16
  7:17 11:12
  17:22 23:1,5,9
  23:22 24:1
  31:18 32:1
example 7:17
  8:17 9:12
  30:17,18 34:3
examples 9:12
  31:2 33:1
excess 6:25
exchange 28:19
exclusive 32:7
excuse 30:9
  32:22
exhort 14:24
exist 18:25
  24:21 26:25
  32:5

existed 28:13
existing 24:21
expand 8:24
expanded
  23:12
expediency
  8:18
expedient 8:19
expense 8:8
explain 17:5
  26:15
explained
  12:23 13:14
explains 9:25
expressed 7:21
extensive 11:11
extraordinary
  16:10

f

f 36:1
face 4:18
facing 24:16
fact 5:5 14:6,7
  14:7 19:22,23
  20:6 26:19
  27:23 29:13
  31:19
facts 7:23
factual 21:19
  21:19,22 26:15
  26:18 27:8,20
  28:11
failure 12:11
  13:7

fall 11:14 12:17
  17:25 26:20
fallout 6:16
far 12:5,5
fashion 6:12
  30:15
favor 27:11,11
fbi 29:8
february 28:2
felipe 1:10
fewer 6:22
fiduciary 32:22
fifth 24:25
fighting 17:8
filed 6:22 18:23
  28:1,19
filing 28:13
final 7:20 34:20
financial 7:24
  12:12 32:9,22
findings 10:1
  21:19 34:16
finds 8:1,2,25
  17:16 22:13
fire 12:14 13:9
  16:16 26:20
fires 13:5
firm 9:19 27:2
  27:12 31:23,23
  34:22
first 4:21 11:21
  14:2 18:12
  25:21 26:24
  33:21 34:11

fiscal 6:21
flagging 10:13
flexible 27:17
floor 2:4
focusing 18:24
fold 25:14
foregoing 36:4
formal 5:24
  7:11
formerly 9:19
forth 19:11
  23:9 31:7
found 7:23
  25:9 27:9 28:4
  28:16
founders 12:8
four 8:22 15:1
  22:2 28:8,22
fourth 17:11
frame 15:22
  25:6,17
frames 26:3
frankly 30:14
  31:14 32:14
fraud 30:19
  31:19
fraudulently
  14:8
free 11:14
  12:17 17:25
  26:20
freedom 16:13
frequency 6:20
fried 13:1,8,16
  13:20,24 14:8

28:8
friend 27:22
friends 10:6
ftx 1:3 4:3 5:5
  12:13 13:19
  17:17 18:1,11
  18:23 26:19
fugitive 7:25
full 29:6
funds 5:7
further 5:22
  10:23 35:4

g

g 4:1
garling 36:3,8
gatekeeper
  13:2
gatekeepers
  12:18,20 13:12
  16:4,6,8
generally 5:17
genesis 32:1
give 14:8 15:15
  21:1 24:8 25:4
  26:4,9 31:19
  33:24
given 15:10
  30:6,6
giving 13:25
glenn 25:2
go 5:11 8:12
  9:14 15:12
  19:14 22:18
  23:16,19 25:14
  27:18 32:25

goes 25:10
going 8:14 18:7
  18:12 20:9
  21:23 25:3,4,4
  29:4,17
good 4:6 11:3,4
  16:15,22 18:5
  30:1,2
government
  29:6
grant 5:9
gratitude 7:22
great 6:3 7:21
  9:4 17:23
greater 18:1
gutted 11:24

h

half 13:3
hand 30:21
handcuffs 29:4
handedly 11:24
happen 13:22
  29:4
happened
  17:14 20:7
  24:24 27:25
  29:12
hard 13:6
hastings 2:3
  30:3
head 28:14
  33:13
hear 25:19
  32:18

heard 32:4,15
  32:23
hearing 19:4,6
  19:10,22 20:10
  20:14,18 27:1
  27:19 34:2
  35:12
hearings 19:21
held 26:25
help 17:1
helpful 9:10,11
  9:17
hid 13:8
hide 13:6
highly 28:15
history 31:13
  33:22
honor 6:9 7:1,8
  8:10 9:9 10:9
  18:15 20:5
  21:2 22:24
  24:8 25:13,23
  26:3,10,16,24
  30:2,5,16 31:2
  31:12 32:3,20
  33:2,13,14
honor's 31:18
honorable 1:10
  1:11,11
honors 4:6
  10:23 11:4
  18:9,12,15,20
  18:25 19:11
  22:8,18 24:15
  24:24 28:1,10

29:21,25 33:19
35:4
**hours** 28:8
**hundred** 5:6
29:17

**i**

**idea** 5:18 19:1
**identity** 19:17
**ignore** 17:20
26:19
**important** 5:14
9:17,23 12:16
13:1,20 18:20
22:18 32:13
**importantly**
29:22
**imposed** 10:3
**improperly**
9:20
**impropriety**
30:20
**includes** 32:13
32:14
**including** 7:24
9:19 12:25
13:12 28:8
32:8
**independent**
4:20 9:23
11:16,17 12:21
28:5,6,16
34:25 35:3
**independently**
17:4

**indicate** 16:9
**indicated** 12:3
**individual**
34:10
**individuals**
28:15
**induced** 14:8
**inducing** 13:22
**inflection** 17:17
**information**
12:12
**insiders** 12:25
**inspect** 16:21
16:21
**installed** 28:15
**intended** 17:22
**intercompany**
9:21
**interest** 4:23
17:24 18:1
19:23 26:23,25
27:14 30:21
**interests** 4:22
10:8,15
**interpreting**
31:15
**investigate**
14:23 16:5
17:23 23:10
29:9 32:6
**investigated**
5:25 7:13
16:18,19 32:16
**investigates**
23:2,21

**investigation**
4:15 5:19 6:12
7:20 8:15,19
8:21,23 9:2,24
9:25 10:17
11:16 12:21
15:12,23 19:9
20:2,3,24 21:5
21:16 22:8,11
22:11,17 23:8
24:9,10,22
25:17 31:25
32:8 33:9
34:15,16 35:1
**investigations**
21:23,24 28:17
28:18,20 32:12
**investing** 17:12
**involved** 16:2
19:22 26:18
**involves** 5:3
**involving** 4:13
**issue** 4:25 9:25
24:18 25:1,8
27:13 34:15
**issues** 20:9,13
24:16 27:10
32:12

**j**

**j** 1:11,15 36:3,8
**ja17** 10:12
**james** 1:21
18:10
**job** 12:9

**john** 12:4
**jonathan** 1:18
11:5
**judge** 4:2,4,11
5:11,13 6:1,7
6:24 7:4,6,21
8:5 9:3,3 10:5
11:1,3,24 12:2
15:3,5,11,14
18:3,5 19:2,15
19:20 20:8,9
20:10,21,25
21:3,6,8,15,18
21:18 22:4,9
22:20 23:23
24:4 25:2,7,11
25:16,19,24
26:1,4,7,11,22
26:25 27:9,16
28:4,16 29:13
29:16,24 30:1
30:7,10 31:3,5
32:25 33:3,6
33:10,17 35:7
35:9
**judges** 1:12 8:7
**judgment** 4:12
**judicata** 27:11
27:17
**judicially** 27:15
**justice** 1:15
22:1 28:21
29:11

| k | | | |
|---|---|---|---|

**ken** 30:2
**kenneth** 2:3
**key** 16:3 17:10
**kind** 8:2,18
**know** 6:10,20
8:2,6,23,25
9:15,21 10:2
10:14,19 12:7
12:19 15:18
16:15,16,16,16
16:17,18,18,19
16:25 18:8
25:3 31:15
33:12
**knowingly**
13:24
**known** 7:23

| l | | | |
|---|---|---|---|

**l** 1:10,21
**laid** 14:22 20:9
**language** 5:15
5:19 10:16,20
15:10 17:20
21:9 24:3
29:23 31:3
**large** 7:16
11:12 17:23
33:7
**larger** 17:25
**laudable** 14:17
**laughter** 30:8
**law** 1:18,19
9:19 11:5,6
27:1,16,17

29:21
**lawyers** 13:12
13:13
**leading** 4:16
13:16
**learned** 26:13
27:10,21
**leave** 30:20
**leaves** 5:19
**led** 11:11 22:2
**legally** 14:2
**legislative** 31:6
31:13 33:21
**legitimate**
15:19
**lehman** 11:18
28:11
**level** 25:9
**likelihood** 17:2
**limit** 34:3
**limited** 25:5,6,6
**lipson** 1:18 3:4
11:4,5 15:4,7
15:13,17 18:4
26:13
**lipson's** 25:20
**list** 32:7
**listening** 28:24
**litigation** 17:3
17:8
**little** 32:18
**llp** 1:21 2:3
**logical** 30:14
**logically** 31:1

**long** 8:14
**look** 5:24 7:10
9:11,18 10:12
13:9 22:25
24:3,12 25:14
25:16 27:13
34:7
**looked** 9:1
32:24
**looking** 18:18
**looks** 4:21,24
29:2
**lot** 6:5 16:16
**lower** 14:22

| m | | | |
|---|---|---|---|

**made** 4:12 5:22
7:10 8:11,12
9:13 10:1 12:7
18:13,14 20:15
20:22 21:19
33:3 34:1,5
**magnitude**
31:9
**main** 33:15
**major** 25:20
**majority** 23:22
**make** 5:11 7:4
7:11 9:6 10:6
10:10 11:21
17:15 30:21
33:16,20 34:21
**makes** 19:2
29:22
**making** 21:10
22:5

**malpractice**
14:6
**management**
9:16 28:12
**managing**
15:20
**mandatory**
5:23 6:14 25:1
**market** 2:24
**marks** 17:17
**matter** 14:24
29:13 35:10
**matters** 13:4,10
**mcclatchy**
31:21 33:9
**mean** 6:13 14:3
19:6 22:9
27:16
**meaning** 24:11
**means** 11:19
**members** 31:8
**mentioned** 8:20
15:21 27:11
30:17 34:9
**met** 5:1,4,5,9
6:16 19:12,13
34:3
**mid** 2:23
**million** 4:13 5:7
6:25 7:21 13:3
19:12,15,22
29:17 30:23
34:3
**millions** 27:7

**mind** 22:25
  31:20
**minimize** 8:7
**minimum**
  16:20 34:14
**minutes** 4:9
  11:8
**misconduct**
  11:15
**mislead** 13:24
**mismanagem...**
  30:19
**moment** 24:15
  32:11
**money** 8:13
**month** 8:22
**months** 13:4
**motion** 19:1
  20:15 30:22
  34:1,23,24
**motions** 6:22
  6:24
**moves** 10:22

**n**

**n** 3:1 4:1 36:1
**name** 26:5
**narratives** 9:17
**national** 2:23
**naturally** 20:1
**nature** 17:4
**necessary** 8:18
  20:23,24 34:10
**need** 9:1 22:24
  29:3

**needed** 31:9
**needs** 5:25
**never** 11:13
  12:10 13:22
  14:1,4 17:25
  25:8
**new** 1:22,22 2:5
  2:5 9:13 11:18
  12:3 22:2 25:3
  28:25 29:7
  31:22 32:1
**newspaper**
  31:21
**non** 32:7
**normally** 33:25
  34:18
**north** 1:19
**note** 6:19 7:15
**notice** 19:4,5,9
  19:21 34:2
**notwithstandi...**
  27:4
**november** 1:6
  18:21 36:11
**number** 11:10
  13:10,14 16:7
  16:9,11,20,24
**nw** 1:16

**o**

**o** 4:1 36:1
**objected** 27:3
  34:22,23
**objection** 27:5
  27:8

**obviously** 6:5
**occurred** 12:13
  28:2
**ocean** 29:15
**odd** 16:24
**office** 18:13,24
  20:11,19 21:22
  23:7 29:7
**office's** 9:8
**officers** 7:24
**official** 2:2 30:3
**okay** 4:2 16:22
  24:4 26:1,7
**once** 5:8 34:5
**operates** 23:17
**opponents** 5:13
  6:1
**opportunity**
  27:22 29:14
**opposite** 14:14
**oral** 1:10
**order** 15:1 20:3
  20:8,8 22:11
  22:11 27:20,21
  35:6
**orders** 16:14
  23:4
**ordinarily**
  14:17
**ousted** 9:15
**outset** 12:9
**owes** 5:7
**own** 12:24

**p**

**p** 4:1
**pa** 1:4 2:24
**page** 3:2
**papers** 20:22
**park** 2:4
**part** 9:1,2 17:4
  30:20
**participated**
  32:10
**particularly**
  9:21
**parties** 4:22
  7:23 8:12
  10:15 17:2
**party** 30:21
**pasquale** 2:3
  3:6 30:2,3,9,12
  31:4,11 33:2,5
  33:7,12,18
**passed** 27:21
**paul** 2:3 30:3
**pending** 31:25
**pennsylvania**
  1:16,20
**people** 29:3
**perform** 12:4
  23:4
**performed**
  10:12
**performing**
  34:19
**person** 9:24
  34:6,6 35:1

perspective 28:11
persuaded 14:11
petitioner 11:7
philadelphia 1:4,20 2:24
phrase 19:6 20:1 24:11
pick 34:6
place 8:19 9:4 14:2 22:17
plain 5:15 17:20
plan 14:16,19
platform 5:8
play 13:20 16:6 18:16
plays 11:22 17:18 33:25
pleadings 12:24 16:11
pleas 22:2 28:22
please 4:7 11:5 15:4
plenty 29:4
point 6:13 11:21 12:1,2 14:15 16:23 17:18 22:12 25:11,20 34:11 34:12,19,20
points 33:15,20

position 6:2
possession 23:4 23:15,19
power 21:1 29:6
powers 23:12
practice 23:11 33:25
pre 13:11,13 16:6 28:13
precipitated 11:14
predicate 16:3
prepetition 32:13
prerequisites 5:1,4
presented 12:16
press 16:13
pretending 29:12
pretrial 20:8,8
previous 7:15
prime 23:24,24
primes 24:6
printed 24:4
prior 31:23
probably 16:17 33:6
problem 26:20
proceeding 7:14
proceedings 36:5

process 17:13 18:24 19:10 24:20
processing 6:4
professor 25:20 26:13 27:10,21
professors 1:18 11:6
program 34:23
proof 20:18
properly 14:4
property 17:6,6
proposal 7:10 8:13 34:8
proposals 5:24
propose 14:16
prosecution 13:23
protect 17:13
protocols 9:4
provide 7:25 9:12 14:21
provides 32:7 34:14
providing 24:13
provision 6:14 31:7
public 12:5 17:12,23 18:1 28:19
publicity 27:24
publicly 17:12
published 11:11

put 14:13 23:8

**q**

qualified 28:5 28:16 30:22
question 12:16 12:22 16:3 17:3 22:5,7,16 31:18
questions 10:24 11:9 12:3 13:14,23,24 14:10,11 16:4 17:15 30:6 33:15 34:2 35:4
quick 9:13 33:20
quinn 15:24
quite 16:25 31:8

**r**

r 1:6 4:1 36:1
raise 30:21
raised 20:14
rationale 30:24
ray 9:12 12:4,7 12:9 13:16 15:24 28:4
ray's 12:15 13:5
reach 25:1
read 18:17 21:12 30:12,14 30:15 31:1

**reading** 10:5,10
10:19,20 13:18
21:10 22:5,10
**ready** 4:5
**really** 31:12
33:15
**reason** 26:10
30:24
**reasons** 9:5
13:10 16:15,22
18:1
**rebuttal** 4:9
**recently** 12:25
**recognized**
4:17
**recognizing**
6:17 23:8
**recommendat...**
17:15
**record** 12:5
21:19 32:20
36:5
**recovery** 7:6
**redacted** 16:11
16:21
**reduce** 17:2,8
**reducing** 7:6
**refer** 19:9
23:11 24:21
**refers** 20:1
**region** 1:6 2:23
**regulatory** 13:4
**relate** 19:8
**relentless** 29:2
29:2

**remainder**
10:24
**remand** 14:25
**removed** 28:13
**reorganization**
11:22 13:21
14:16,19 17:19
**report** 9:25
11:16 12:22
14:24 17:5,11
17:23 23:10
34:16
**reporter's**
16:12
**reporting** 2:23
**reports** 23:2,21
28:3,19
**represented**
28:2 31:24
**representing**
9:20
**request** 5:10
6:15 33:3,10
**requested** 4:15
**require** 12:16
**required** 5:2,9
**requirement**
10:3
**requirements**
6:16 10:2
**requires** 35:2
**res** 27:11,17
**reserve** 10:24
**respect** 7:5
17:14 22:1

24:18 27:1
**respond** 25:20
**response** 7:9
**responses** 7:9
**responsibilities**
25:5,5
**rest** 32:24
**restrepo** 1:10
**result** 29:10
30:16
**retention** 12:24
27:1,4,6 34:21
**return** 33:21
**revco** 4:16
11:19
**reverse** 14:25
35:5
**reversed** 11:23
18:2
**right** 9:4 12:15
15:19 16:14
19:4 20:2,17
22:18,25 26:17
**role** 11:21
13:15,20 16:6
16:7 17:18
**rules** 14:7 19:1
31:9

**s**

**s** 4:1
**s&c** 13:24
**satisfied** 4:25
**save** 4:9
**says** 6:18 19:4
19:20 21:3

**school** 1:19
11:6
**scirica** 1:11
**scope** 5:21 7:13
15:9,12,16,23
19:16 20:14,15
24:21 29:14
34:7,9
**scores** 16:12
**sealed** 16:11,21
**sealing** 16:13
**second** 4:3,22
19:19 34:12
**secrecy** 16:10
16:15
**section** 4:19
11:24 18:16,16
18:17 32:7
34:13,13,14
**sections** 18:16
**securities** 28:19
**see** 10:11 13:7
23:25 24:5
32:20 33:14
**seek** 14:16
**seems** 30:25
31:7
**seen** 6:16 11:14
12:10
**semantic** 22:13
**senator** 17:21
**sense** 29:22
31:14
**serious** 11:15

seriously  32:23
set  5:20 8:16,18
  8:24 19:11,21
  23:9 34:9
several  12:13
  15:21 24:17
shepherds
  17:21
short  18:22
show  27:22
side  6:17 8:7
  10:6 29:16,16
  34:12
side's  10:10
significant  5:20
significantly
  17:8
signify  5:15
simply  13:9
  17:11 21:13
  24:13 25:2
  27:23 29:21
simultaneously
  13:21
single  11:24
sir  15:13
sitting  18:21
  28:23 29:11
situation  7:19
  22:12 24:19
  26:2,18 28:10
sixth  4:16 6:13
size  4:24
sketch  29:14

smoke  13:8
  16:17
sontchi  25:7
sorry  5:11 31:4
  33:13
sort  4:23 5:22
  6:12,16 8:16
  9:16 10:21
  34:24
southern  22:2
  25:3 28:25
  29:7 31:22,25
special  31:9
specific  8:2
  15:2
specifically
  10:1 34:21
specificity
  14:21
specified  4:19
spectacular
  11:14
spoke  34:13
spring  14:17
springer  1:15
  3:3,7 4:4,6,7,12
  5:17 6:9 7:1,8
  8:10 9:9 10:9
  11:2 33:19
  35:8
standing  28:25
start  18:7 30:5
  30:7,10
statements
  12:8,15

states  1:1,12,15
  11:7 18:14,23
  19:10,18 21:22
  23:6 24:17
  27:3,4 29:6
statute  4:14,18
  12:6 15:10
  19:3 20:25
  22:9,13 23:6
  23:10 30:14,20
  31:1
statutes  31:16
statutory  5:1
  6:15,18 14:13
  23:16 32:6
stay  9:15
step  19:19
stephanos  1:11
steps  29:1
stood  29:14
stop  15:3
stopped  21:14
stops  6:6
story  30:23
street  1:19,22
  2:24
stretch  5:22
strong  12:8
structure  5:15
studies  11:11
  11:13
subject  11:13
subsection  4:21
  4:23 5:3

substantial
  28:3,22
suggest  34:7
suggested
  18:25
suggesting  6:17
suggests  7:12
  13:18
suite  2:24
sullivan  1:21
  12:20,23 13:6
  13:15,19 14:6
  15:24 18:10
support  11:7
  34:21
supported  27:5
supposed  20:13
supposedly
  24:1
sure  4:11 6:4
  11:1 15:25
  29:18
surplusage
  10:6,10
system  8:4

### t

t  36:1,1
tailored  15:22
take  8:14,19
  21:21 22:17,24
  23:7 32:18,22
  35:10
taken  21:21
takes  23:3,18
  24:17

**talk**  8:5 24:15
**talking**  23:17
  23:20 29:10
**talks**  22:25
  23:1,2
**team**  28:12
**tell**  6:21 15:6,8
  16:22,23
**telling**  17:12
**tells**  24:12
**temple**  1:18
  11:5
**term**  5:14,17
  23:25
**terms**  14:13
  24:6 25:12
**testimony**
  21:20,22
**text**  5:16 6:18
  33:21 35:2
**thank**  11:2 18:3
  18:4,8,9 29:24
  29:25 33:17,18
  33:19 35:7,8,9
**things**  7:25 8:6
  8:16,24,25 9:1
  9:10 10:13
  11:9 14:3,23
  15:2,25 17:7
  17:10 24:17
  27:10 32:23
  34:7,9
**think**  6:9 8:8
  9:9 10:9,19
  14:23 15:8

25:13,14 30:18
  31:11,12,13,16
  32:23 33:7,22
  34:12,13
**thinking**  30:5
  31:20
**third**  1:2
**thought**  17:5
**threatened**
  14:18
**three**  4:9 11:9
  14:15 16:24
  17:10,14 33:20
**threshold**  5:5
  19:12
**time**  10:25
  14:15 15:22
  18:8,9 25:6
  27:20 33:14
**timeline**  8:19
**today**  11:10,20
  16:7 18:10,21
  29:12 32:15
**today's**  11:13
**told**  12:10,13
**took**  9:4
**top**  29:16 33:12
**topics**  8:14
  9:10
**totally**  15:19
**trading**  1:3
  18:11
**transactional**
  13:4

**transcriber**
  36:3,9
**transcript**  1:10
  36:4
**transparency**
  11:22 14:18
  17:18
**treatise**  4:17
**trial**  22:3 28:7
**trials**  28:23
**trigger**  4:20
**true**  36:4
**truly**  11:17
**trustee**  1:6 4:8
  6:7,22 11:7,18
  15:21 18:14,21
  19:10,18 20:15
  20:22 23:3,15
  23:18 24:17
  27:3,4 29:14
  29:19,19 34:5
  34:18,25
**trustee's**  18:24
  20:11,19 21:22
  23:7 31:5
  34:23
**trustworthy**
  12:12
**try**  31:17
**trying**  33:7
**turning**  11:21
**two**  4:19 11:11
  12:2 13:10,14
  16:9,20 17:7
  18:15 22:14,25

23:5,9,11,25
  27:7 31:25
  34:19
**type**  4:14
**types**  4:24
  10:14 23:1,5,9
**typically**  34:1

**u**

**u.k.**  7:25
**u.s.**  4:8 5:8 6:21
  15:21 18:21
  20:11,15,19,22
  23:24 28:24
  29:7,8,14,18,19
  31:5 34:5,22
  34:25
**ultimate**  5:21
**umbrage**  32:18
**umbrella**  9:22
**under**  7:21
  9:22 10:18,18
  10:22 19:23
  20:17 23:5,10
  24:14,20 30:24
  35:10
**understand**
  29:3
**understanding**
  6:23
**unidentified**
  4:2,4,11 5:11
  5:13 6:1,24 7:4
  8:5 9:3 10:5
  11:1,3 15:3,5
  15:11,14 18:3

18:5 19:20
20:25 21:3,6,8
21:15 22:4,9
22:20 23:23
24:4 25:11,19
25:24 26:1,4,7
26:11,22 27:16
29:24 30:1,7
30:10 31:3,5
32:25 33:3,6
33:10,17 35:7
35:9
**united**   1:1,12
1:15 11:7
18:13,23 19:10
19:18 21:22
23:6 24:17
27:3,4 29:6
**university**   1:18
**unprecedented**
16:11
**unrebutted**
21:22
**unsecured**   2:3
30:22
**urgent**   14:24
**use**   11:12 13:5
19:21
**used**   23:25
**uses**   21:8
**usually**   8:10

### v

**v**   1:5 4:3
**valuable**   15:25

**value**   7:25
**vara**   1:6 4:3
**vast**   23:21
**veritext**   2:23
**view**   19:14
**violated**   13:25
14:7
**voluminous**
28:19
**voyager**   32:1

### w

**want**   11:8 14:5
24:7 29:15,15
29:18 34:20
**wanted**   17:13
27:22 31:17
33:16 34:25
**washington**
1:16
**way**   8:3,10
10:20 13:9
24:11 30:14,15
31:1
**ways**   15:20
**wednesday**
28:9
**week**   7:20 8:20
22:3 28:9,24
**weeks**   12:13
**went**   31:6
**whatsoever**
19:12
**william**   36:3,8
**williams**   28:24
29:9

**withdrew**   27:5
**witnesses**   21:20
**word**   33:25
**words**   13:6
**work**   7:22
15:23
**worked**   9:19
**works**   8:11
**worldcom**
11:18 28:12
**write**   17:11
**written**   28:3
31:7
**wrong**   25:24
26:3 31:10,12
**wrongdoing**
8:2

### x

**x**   3:1

### y

**year**   6:21 14:17
18:22,22 27:25
32:11,20
**years**   25:10
**york**   1:22,22
2:5,5 22:2 25:3
28:25 29:7
31:22 32:1

### z

**zero**   24:23

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.